THE PEOPLE, *ex rel.* John Hubbard, *vs.* WILLIAM R. ANNIS.

Summary proceedings under the statute, to recover the possession of land, can not be sustained unless the conventional relation of landlord and tenant exists, between the parties. The relation created by operation of law, merely, will not answer.

Where the defendant hired the relator to work for him one year, on his farm, for the sum of $270, and was to furnish him house room for himself and family, a garden, and pasture for a cow; *Held* that this was not a demise of premises in the nature of a lease, creating the relation of landlord and tenant.

That the relation was simply that of employer and employee, or master and servant, and the house room, garden and pasture were parts, merely, of the contract for service, and operated as a portion of the consideration of that agreement.

CERTIORARI to a justice of the peace to remove proceedings instituted by the defendant as landlord, against John J. Hubbard, as tenant, to recover summary possession of certain premises. The facts were these: The plaintiff entered into an agreement with the defendant on the 1st day of December, 1864, to work for the defendant on a farm for one year, and the defendant was to furnish him a house to

The People *v.* Annis.

live in, a garden spot, pasture for one cow, fire wood, &c. and to pay him $270. The defendant swore that the plaintiff was to have the use of rooms in the house, cow pasture, &c. only so long as he continued to work for him; but he did not testify that there was any agreement or understanding that the plaintiff should, under any circumstances, give up the house or quit work in less time than one year. The parties, in the latter part of August, 1865, got into a dispute about the state of their accounts, and by consent of the defendant the plaintiff quit work, and hired out in another place, his family still occupying the rooms in the house, and the plaintiff living with them, when proceedings under the statute relating to "Summary proceedings to obtain possession of land" were instituted, and the plaintiff was dispossessed by the warrant of the justice.

*A. M. Bingham,* for the relator.

*Hastings & Bingham,* for the defendant.

*By the Court,* JOHNSON, J. The proceedings before the justice, in this case, can not be sustained unless the conventional relation of landlord and tenant existed between the parties. The relation created by operation of law merely will not answer. (*Benjamin* v. *Benjamin,* 5 *N. Y. Rep.* 383.) The books are full of cases on this question, and they are all one way, so that it is unnecessary to cite others, to sustain the proposition.

The question then is, what was the relation created between the parties by their agreement? Was it that of landlord and tenant, or of master and servant merely? The parties, in their affidavits before the justice, do not differ essentially as to what the agreement was, under which the relator went into possession of the premises. They differ only in this: the defendant, in his affidavit, alleges that the relator was to occupy so long only as he continued to work under the agree-

ment. This the relator denies, and alleges that by the agree-
ment he was to occupy for the year without reference to his
continuance in the defendant's service. But this difference
does not affect the question, of the character of the relation
created by the conventional arrangement. The defendant
in his affidavit characterizes it as a demise, but that does not
make it so. The agreement itself is set out in the affidavit,
and both parties agree as to what it was, with the difference
above mentioned. The agreement is this : The defendant hired
the relator to work for him one year on his farm, for the sum
of $270, and was to furnish him house room for himself and
family, a garden and pasture for a cow. It is very clear, I
think, that this is no demise of premises, in the nature of a
lease, creating the relation of landlord and tenant. The
relation is simply that of employer and employee, or master
and servant, and the house room, garden and pasture of the
cow are parts merely of the contract for service, and operate
as a portion of the consideration of that agreement. No rent
is reserved or intended, and there could be no such thing as
a claim by the owner for use and occupation while the agree-
ment continued in force and the parties acted under it. It
is simply the case of a hired man living with his employer,
or upon his premises, as such. To call this a tenancy would
be a confounding of all legal distinctions. In *Haywood* v.
*Miller*, (3 *Hill*, 90,) it was held that an agreement of this
character did not create the relation of landlord and tenant,
but that of master and servant only.

It may be that the relation of landlord and tenant existed
between the parties at the time the proceedings in question
were instituted, and I am inclined to the opinion that such
was the case. Both parties agree that the relator had then
quit the defendant's service, and refused to continue or serve
longer under the agreement. Whether the defendant or rela-
tor was most in fault is of no consequence. It is enough
that the contract was broken, or put an end to, and neither
party any longer acted under it. The contract for the service

The People *v.* Annis.

having been determined, and an end put to it in this way, the right of occupancy under it went also, and was ended. The relator, after that, was in possession not as a trespasser, but as one holding after his right of occupancy had been extinguished, and of course he became a tenant at will or suffer-. ance. But this relation sprung not from the conventional arrangement, but by operation of law merely, upon the failure of the conventional arrangement. The parties had put an end to the relation created by their agreement voluntarily, and the law created the new one. I put this upon the ground that both parties have treated this agreement as no longer in force, for the purpose of being performed and carried out by the relator. In this respect it differs from the case of *Haywood* v. *Miller, supra.* In that case the employer, for some alleged act of improper disobedience, had given the servant notice to leave his service and the premises, which the latter refused to do. The employer thereupon entered the house and threw the goods of the servant out. The action was trespass for throwing out the goods. The court held, that as there was no relation of landlord and tenant, trespass would not lie, but the action, if any, should have been upon the agreement for a breach. But there the agreement was still kept on foot by one of the parties, who insisted upon continuing under it. So much, upon the assumption that the relator's version is the true one, that the occupation was to be for a year without any other condition as to time. Assuming the defendant's version to be the correct one, that the occupancy was, by the terms of the agreement, to continue as long as the service continued, and no longer, the same legal result would follow, precisely. In such case the holding over would be clearly after the right of occupancy, as servant, was ended, ended by the terms of the agreement; and the tenancy at will or sufferance would spring up by operation of law. It is of no consequence, however, whether a tenancy at will or sufferance would follow in either case, as that would not help the defendant's case. It is enough

that here was no conventional relation created by the agreement. This appears from the defendant's affidavit, before the justice, on which the proceeding was founded. The justice therefore had no jurisdiction, and the proceedings before him, and the adjudication, and warrant, are all void, and must be reversed, with costs.

[MONROE GENERAL TERM, March 5, 1866. *Welles, E. Darwin Smith* and *Johnson,* Justices.]