THE PEOPLE ex rel. JEREMIAH COOPER *v.* NEWCOMB FIELDS.

(GENERAL TERM, FIFTH DISTRICT, OCTOBER, 1869.)

Where the complaint in proceedings for a *forcible entry and detainer* is defective, for omitting to set out the nature of the complainant's title or interest in the premises, and the objection is properly taken before the county judge and overruled, the defendant, after the proceedings are brought into this court by certiorari, should renew the objection before

The People *v.* Fields.

he traverses the inquisition. *After verdict* for the relator upon such defective complaint, it is too late to make the objection, but the verdict will be sustained if the facts proved on the trial are such as entitle the relator to the protection of the statute.

It is competent for the defendant, in these proceedings, to disprove the facts relied upon by the complainant to establish his possession.

The inquisition found the defendant guilty of both a forcible *entry* and *detainer*. On the trial of the traverse, the petit jury found the defendant *not guilty* of a forcible entry, but guilty of a forcible *detainer*. It seems the verdict, if right upon the merits, may be sustained as to form.

Upon a former trial, the relator was nonsuited, and this court granted a new trial. (See 52 Barb., 198.) The doctrine of that case is approved, so far as it holds that *naked possession* or *occupation* is sufficient evidence of title to enable the occupant to maintain these proceedings against a stranger without title.

Upon the last trial it was proved, or evidence was offered and rejected tending to prove, that the shop of the relator originally belonged to one Fish; that Fish obtained permission of the owner of the land to put it upon the lot on part of which it stood, without the payment of rent or other compensation, where it was to remain until the owner should require it to be removed; that the defendant afterward purchased the lot, and, with the consent of Fish, commenced excavating, for the purpose of erecting a block of stores; that Fish agreed to move off the shop, and was making preparations to do so, when the relator purchased it of Fish, and claimed a right to occupy the land on which it stood. The defendant then moved the shop into the public highway, and, by the verdict of the jury, was guilty of "*forcible detainer*" in keeping the relator out of possession. *Held :* (1). That if Fish was to be regarded as a tenant of the owner, it was strictly a tenancy at will at common law, and was terminated without notice to quit, by the very act of transfer, under color of which the relator acquired title to the shop:

(2). That the defendant, having entered into possession of part of the premises, with the assent of Fish, before the sale of the shop to the relator, must be deemed in the *constructive* possession of the whole; and that the relator, having attempted afterward to occupy the lot with his shop, was a mere intruder upon the possession of the defendant.

(3). The jury, having negatived the charge of a *forcible entry* upon the premises by the defendant, there is no ground upon which the relator can claim *constructive possession*, so as to sustain the verdict for a *forcible detainer*, as against the owner in actual possession.

And per Morgan, J. To authorize proceedings for a *forcible detainer*, the entry must be an *unlawful* entry, followed by a *forcible* detainer.

An entry by a person entitled to the possession is not unlawful, although made against the will of the party in possession; such person may enter peaceably upon the party in possession without right, by the very terms of the statute.

To entitle the complainant to the protection of the statute, he must have at least a *right to the possession.* (2 R. S., 508, §3.) And a complaint would be fatally defective if it alleged *possession* only, without alleging a *right to it.*

A right of possession gained by *disseizin* is sufficient. So *it seems,* one who enters under a valid lease or contract of sale and who is holding over after his term has expired, or his contract has become forfeited, may be deemed still seized of his original estate, and entitled to the protection of the statute against a forcible entry upon his possession by the owner.

But one, placed on the lands of another, without any terms prescribed or rent reserved, is not within the protection of statute; but is strictly a tenant at will at common law. An entry by the landlord, and notice to quit, will terminate the tenancy, and revest the possession in the landlord, though the tenant be not actually turned out.

A parol license to enter upon another's premises, to erect and maintain a house is revocable and confers no right whatever upon the licensee to occupy the premises after it is revoked.

Such a license operates only as an excuse for the act, which would otherwise be a trespass, and confers neither possession nor right to possession as against the owner, within the meaning of the statute.

MOTION for a new trial upon a case and exceptions by defendant after verdict for the relator, finding the defendant guilty of *forcible detainer,* but not guilty of *forcible entry.*

Motion by the relator for an order of restitution.

Appeal from the order of the court at Special Term, denying a motion made by the defendant to quash the proceedings on account of the insufficiency of the complaint.

All these motions were heard together. The preliminary proceedings before the county judge, and the subsequent proceedings before the traverse was sent down to the circuit for trial, are set out at length in the case, as reported in 52 Barb., 198, which renders it unnecessary to recapitulate them here. The additional facts and circumstances appearing upon the last trial are referred to in the opinion of the court.

*D. Pratt,* for the defendant. The complaint was not sufficient. It did not allege that the relator had an estate in freehold, or for a term then subsisting, or some other right to the possession thereof, as required by the statute.

(2 R. S., 508.) It is not enough to allege, generally, that the party is entitled to possession. The particular title showing the right of possession should be set forth. (Rev. Notes, 5 R. S., 492 ; *People* v. *Nelson*, 13 J. R., 340 ; *Carter* v. *Newbold*, 7 How., 166 ; *People* v. *Shaw*, 1 Caines, 125 ; *Same* v. *King*, 2 id., 98 ; *Same* v. *Reed*, 11 Wend., 157.) It is not sufficient to allege circumstances from which a title may be inferred. In pleading, facts must be alleged, and not the evidence of facts. Besides, the statute requires, peremptorily, that the nature of the title be set forth in the complaint.

The complaint not being sufficient to give the officer jurisdiction, the proceedings may be quashed at any stage of the proceedings. (*People* v. *Smith*, 24 Barb., 16 ; *People* v. *Reed*, 11 Wend., 157.) The proceedings are special, and are, therefore, subject to the rules applicable to courts of limited jurisdiction. (*Thatcher* v. *Powell*, 6 Wheat., 119 ; *Denning* v. *Corwin*, 11 Wend., 647, 652 ; *Smith* v. *Fowle*, 12 Wend., 9, 11.) When the want of jurisdiction appears, the judgment of any court will be void. (*Bloom* v. *Burdick*, 1 Hill, 130 ; *Varnum* v. *Wheeler*, 1 Den., 331 ; *Seaman* v. *Stoughton*, 3 Barb. Ch., 344 ; *Dresser* v. *Brooks*, 3 Barb., 429.)

Under our statute it is all important that the relator should be required to state in his complaint, his title, and swear to it, as it cannot be controverted upon the trial ; and as he seems to be entitled to restitution, if he succeeds, although he has no right or title whatever. Our statute was designed to establish the law in relation to forcible entry and detainer, in accordance with the law as it was already settled by adjudication. (Rev. Notes, 5 R. S., 493, Edm.'s ed.) It was held in *People* v. *Nelson* (13 J. R., 340), the nature of the title should be set out in the complaint. The same has been substantially held since the statute. (11 Wend., 157.) Indeed the same was held by this court in this case, as I understand the opinion of Justice MULLIN. He seems to have fallen into an error in regard to the objection being taken before the officer who took the inquisition. (52 Barb.,

198.) It is therefore submitted, that the motion to quash the inquisition should have been granted.

The decision of the judge upon taking the inquisition was clearly erroneous, and so held by this court. (52 Barb., 198.) It was the duty of the Supreme Court, therefore, upon *certiorari,* to quash the inquisition for any erroneous ruling of the judge upon taking it. (*People* v. *Nelson, supra* ; *Same* v. *Reed,* id. ; *Same* v. *Smith,* id. ; *Carter* v. *Newbold,* id. ; *People* v. *Wilson,* 13 How., 446.)

The shop in question was not real estate, but a personal chattel, and could not itself be the subject of a forcible entry and detainer. (*Smith* v. *Benson,* 1 Hill, 176 ; *Ford* v. *Cobb,* 20 N. Y., 344 ; *Ombony* v. *Jones,* 19 N. Y., 234.) It was not affixed to the freehold, and was capable of severance without injury to the freehold. The owner of the lot and the owner of the building treated it as personal property, and in a state of severance. The owner of the building never claimed any interest in the realty. It was sold to the relator as a personal chattel. Forcible entry and detainer is a wrong done to real estate, and not a wrong done to personal property. (2 R. S., 507 ; 1 Russell on Crimes, 233.)

No possession was proved in the relator at the time of the alleged forcible entry, but on the contrary, the possession of the premises was in the defendant. There is no pretence of an actual possession of the land by the relator. The shop had been vacant and locked for some two months before the alleged entry. Possession of the land surrounding the shop, had been surrendered to defendant nearly a year before. The relator was not in the *constructive* possession of the premises. The shop being personal property, the fact that it was on defendant's land, would not make the relator constructively in possession. (Russell on Crimes, 309.) A man may be in possession by his wife, children or servant, but his cattle or property on the ground do not preserve his possession. (1 Russell, *supra ;* Addison, 43, 316, 353.)

But constructive possession in the relator is not sufficient. He must have the actual possession. (2 R. S., 509.) The

statute requires that the possession be actual.  In cases of forcible detainer, the relator can only show *constructive* possession, but that does not mean constructive possession implied from ownership, but a temporary absence only at the time of the entry.  Unless there be possession in another at the time of entry, whatever the degree of force the proceeding cannot be sustained.  (Addison R., 43, 316, 353.)  The possession must not be scrambling, but quiet, peaceable and actual.  (Ashmead R., 140; 17 Conn., 209.)  Surveying lands, building cabins, and leaving them unoccupied, is not such a possession as is necessary to prove a forcible entry.  (Addison, 43, 316, 353.)

The defendant was in actual possession of the premises.  All of the premises except what was actually covered by the shop, was surrendered to the defendant the year before, and he took possession and excavated it for the basement of the store, which he was about to erect.  That portion upon which the shop rested was in his constructive possession.  Ownership would give him constructive possession in the absence of actual possession by any one else.  (*St. John* v. *Palmer*, 5 Hill, 599.)

But clearly constructive possession of the shop alone would not, of itself, constitute a possession of the lot.  The ruling of the learned judge at the circuit was therefore erroneous.  There was clearly no actual occupancy of the shop at the time of its removal.  It had stood there unoccupied for more than two months.

There being no actual possession of the shop, the least that can be claimed is, that the question of the possession of the lot, must depend upon the intention of the parties.  It seems clear to me that if another's horse or wagon be left upon my premises, that that alone would not necessarily put the owner in possession.  If this be true, what reason is there for holding that any chattel, left in the same way, would have a different effect.  It was, therefore, a question of fact for the jury to determine, whether, when Fish promised to move off the shop, and allowed defendant to excavate, he did not intend to sur-render the entire possession of the land.

The People *v.* Fields.

The exceptions to the rulings of the justice, in regard to admissions of testimony, and to the charge and refusals to charge, were well taken.

The complaint is for forcible entry, and the jury negative it. The verdict of "guilty of forcible detainer" is not responsive and cannot be sustained.

*B. F. Chapman,* for the relator. It is too late for the defendant to move to set aside the inquisition after having traversed it. When a party answers in chief a pleading of his adversary, he is precluded from availing himself of the invalidity of the pleading he answers. The rule is applicable to criminal as well as to civil cases, and especially to those like this, which partake of the character of both classes. (1 Leach Crown Cases, 11, 420; 1 Chit. Cr. L., 303.) The inquisition was found June 11, 1863. The return was filed June 25th, and the traverse served July 14th, 1863. The objections to the complaint were known to the defendant and raised by him before the trial and inquisition, June 9, 1863. The objections having been raised to the complaint before the making of the inquisition, and decided, and also raised upon each trial and decided, the defendant derives no new benefit by reason of a special motion. The motion is only necessary, where the defendant failed to raise the objections before the judge before whom the inquisition was taken. (*People* v. *Field,* 52 Barb. R., p. 210; *The People* v. *Reed,* 11 Wend. R., 159.)

The statute does not require us to set forth the "title of the complainant." "Stating a conclusion of law" is not objectionable. We state a *fact* that brings us within the statute, to wit; a long, quiet, peaceable and uninterrupted possession, for more than five years." The authorities all hold that to be sufficient. Peaceable possession is *prima facie* evidence of estate so as to bring the complaint within the statute. (11 John. R., 504; see 11 Wend. R., 157; 9 Wend. R., 50; 7 How. Pr. R., 441; 29 Barb. R., 208; 49 Barb. R., 89.)

The motion to quash has been made, and decided against the defendant; 1st, by Judge HOLMES, June 11, 1863; 2d, by Judge CAMPBELL, February 17, 1864; 3d, by Judge MASON, October 10, 1865; 4th, by Judge BALCOM, February 8, 1868; 5th, by Judge PARKER, February 1, 1869; 6th, by the General Term Fifth District, 1865, on two occasions. (See *The People* v. *Field*, 52 Barb. R., p. 210.)

The order should be affirmed.

Proceedings will be sustained upon proof of possession alone. Title cannot be brought in question. In this respect the law was changed by the Revised Statutes. Before the revision, the complainant must have had an estate in fee, or for a term of years. (1 R. Laws, 1813, 96, ch. 6, § 1; *People* v. *Nelson*, 13 J. R., 340.) But under that statute the defendant could not set up title to the premises in his defence. The title could not be tried in that proceeding. (*Clason* v. *Shotwell*, 12 J. R., 31; *People* v. *Rickert*, 8 Cowen, 226, N. Y. S. C.; *People* v. *Godfrey*, 1 Hall, 240.) The right of possession cannot even be brought in question, it is mere actual, peaceful possession. (11 Wend., 157; 7 Howard Pr. 441, *People* v. *Porter.*) The proof shows that the relator was in actual possession of the premises. There is no dispute as to the facts on this point. An inclosure by a fence gives possession to the inclosed lands. A building, though but slightly fixed to the freehold, is presumptively a part of the realty; *the parties* may control its nature by an agreement that it may be removed at any time, and it being treated by them as personal property, trover will lie by the owner for its conversion. (*Smith* v. *Benson*, 1 Hill, 176.) But a stranger and intruder could set up no such right to treat a building as personal property. A shanty is a part of the realty. (*Fisher* v. *Saffer*, 1 E. D. Smith, 611.) Holding the key of an unoccupied building gives such possession as will enable these proceedings to be sustained. (*People* v. *Runkle*, 9 J. R., 147; Id. 8 J. R., 465.) Fences even are part of the freehold; or even the material of which they are composed, unless there is some special agreement to vary

the rule and make them personal property. (*Goodrich* v. *Jones*, 2 Hill, 142 ; *Mott* v. *Palmer*, 1 N. Y., Comst., 564 ; *Ford* v. *Cobb*, 20 N. Y., 344.)

The statute laws of this country have followed substantially the English, and the decisions substantially correspond.   Thus, proceedings under the statute may be sustained in case of a forcible entry upon premises not at the time *in the actual occupation of any person, as a church*. (*People* v. *Runkel*, 8 J. R., 464; S. C. 9 J. R., 147; *Same* v. *Fulton*, 1 Kernan, 94.)   A person may have possession in fact when he was not, in fact, upon the land. (*Chiles* v. *Stephens*, 3 A. K. Marshall, 340.)   Delivery of the keys by the vendor to vendee, with the intention of giving possession, gives sufficient possession to enable the vendee to sustain these proceedings. (*Hoffsletter* v. *Blattner*, 8 Miss., 276.)   Locking the doors of a house and keeping the keys, closing the windows and driving stock on the premises, constitutes evidence of an actual possession of land, which will authorize a recovery in an action for forcible entry and detainer. (*Davidson* v. *Phillips*, 9 Yerger, 93 ; Id. 317.)   So in a case of a school-house, of which forcible possession is taken, these proceedings lie. (*Van Hook* v. *Story*, 4 Humph., 59.)   The same doctrine has been held in the case of a mill.

Present—BACON, FOSTER, MULLIN and MORGAN, JJ.

By the Court—MORGAN, J.   After the decision of this court, in this very case (52 Barb., 198), I think it is too late to question the sufficiency of the complaint before the county judge.   Our attention is now called to the fact that the objection was taken before the county judge, which, it is supposed, was overlooked when we made that decision.

But having decided it adversely to the defendant, though erroneously, I am of opinion that it must be deemed the law of the case.

Doubtless, the complainant before the county judge should have stated in what consisted his right to possession, as required by the statute.   (2 R. S., 508, § 3.)   But the proper

The People *v.* Fields.

time to take the objection is before the inquisition is traversed by the defendant. The county judge should have quashed the proceedings on the objection being taken before him. This he refused to do. The proceedings were then brought into this court by *certiorari*, when it was competent for the defendant to renew the objection before he traversed the inquisition. This he omitted to do, but made a formal traverse of the inquisition, and the issue thus formed was sent down to the circuit for trial. The judge having non-suited the relator, he applied for a new trial, upon the ground that the case was one that should have been submitted to the jury. When that motion was before us, we declined to entertain the objection as to the sufficiency of the complaint. My own opinion was that it was too late, after verdict; and that the omission might be cured by the verdict, if the facts appearing upon the trial made out such an interest in the relator as to bring him within the protection of the statute. I see no reason for recalling our decision, even if we did not feel bound to follow it, having once made it in this very case. This disposes of the appeal from the order of the court at Special Term, which should be affirmed, with ten dollars costs.

As to the motion for restitution, that, of course, will depend upon the relator's being able to sustain the verdict.

An objection is made that the verdict is not responsive to the issue. The inquisition finds that the defendant did *forcibly*, and with strong hand, *enter* into the said land and expel the relator therefrom; and being "*so expelled* * * unlawfully and forcibly, and with a strong hand did keep out; and that the estate, and the right of possession of the said Jeremiah Cooper, as aforesaid, still subsists therein." The defendant traversed the inquisition, denying that he was "guilty of said supposed forcible entry and forcible holding out in manner and form as in the said inquisition alleged."

It has been repeatedly held, upon an indictment for forcible entry and detainer, that the petit jury may find the defendant guilty of either *forcible entry* or *forcible detainer*, as they may be two separate and distinct offenses.

But when it is a *continuous* offense the rule may be more difficult to apply. And it has been held in some of the States, that under a complaint alleging forcible entry, *followed* by an allegation of forcible detainer, it is necessary to prove the forcible entry. (*Preston* v. *Kehoe*, 15 Cal. R., 315.) And it is said that the finding of the jury, in an action for *forcible entry and detainer*, that the defendant is guilty of withholding the possession, is not responsive to the complaint. (*Wall* v. *Goodenough*, 16 Ill. R., 415.)

The language of the inquisition would imply that the *forcible detainer* was a mere continuation of the first offence, but it is also added that the relator had a *present estate and interest* in the land at the time, which may be considered equivalent to the allegation that he was in the *constructive* possession, so as to bring his case within the terms of the statute, although the defendant's entry was peaceable instead of forcible. We may, perhaps, reject the alleged *forcible* entry as surplusage, and the verdict be permitted to stand, if it is sustained by the evidence. And I come to this conclusion the more readily as it was considered when the case was before us for the first time, that the question of a *forcible detainer* was the real question to be tried, there being no sufficient proof to sustain a verdict for a *forcible entry*.

We then come to the question, whether the verdict can be sustained upon the evidence.

The case is materially varied from what it was when we decided it before. It then appeared, or the evidence tended to show, and it might have been found by the jury, that the shop of the relator stood upon land belonging to the State. It did not appear what the particular estate of the relator was, but it was considered that his naked *prior* possession of the land in dispute was *prima facie* evidence of title and sufficient to maintain these proceedings *against a stranger who showed no right to possession*. It was not held that these proceedings could be employed to recover possession of a shop as personal property, as supposed by the defendant's counsel. But having possession of the shop, it was to be presumed that

he owned the ground on which it stood, *as against a stranger without title.* This was all that it was necessary to decide, and all that was decided, according to my understanding of the case. The language of Justice MULLIN is emphatic, that a person without right, having gotten into possession of land, may be treated as a *trespasser* as to the owner of the land, and yet be restored to possession by virtue of these proceedings as against a third person having no interest in or right to possession. And that the restoration to possession cannot be had by an intruder as against the lawful owner. (See his opinion, 52 Barb., 211.)

As the building was, or at least, the evidence would have justified a finding that it was, on the land of the State without objection from any one, the possession of the relator was deemed lawful and sufficient evidence of title to sustain these proceedings against the defendant, who, at the time of the nonsuit, had showed no right to question the relator's possession.

I fully concurred in these views of the learned justice who delivered the opinion on that occasion. It is unnecessary to pause now to cite authorities to sustain the decision we then made, and I will only refer to some of them.

It may be said that any possession is a *legal* possession as against a wrong-doer. (2 Greenl. Ev., 618.) Thus an intruder upon the king's possession may have an action against a stranger (*Johnson* v. *Barret*, Aleyn's R, 10); and, *a fortiori*, he may have an action for forcible and unlawful entry against him (Moncure J. in *Olinger* v. *Shepherd*, 12 Gratt., 472); for forcible entry and detainer may be maintained when trespass cannot (*Hyatt* v. *Wood*, 4 John, R. 150.)

One question before us now is, whether the defendant could give evidence to contradict the relator's *prior* possession, and whether the evidence thus given and offered, but rejected, taken together, disproved the plaintiff's interest in the premises, which his prior occupancy of the shop would have established, as against a stranger, to the title.

The statute (2 R. S., 509, § 11), declares that it shall be

sufficient, on the trial of such traverse, for the complainant to show, "in addition to such forcible entry or detainer, that he was peaceably in *actual possession* at the time of the forcible entry, or was in the *constructive* possession of the premises at the time of the forcible holding out." And the traverser may show in defence, that he, or his ancestors, or those whose interest in such premises he claims, have quietly possessed the same for three years next before the inquisition found (id). This provision, as to the defence which may be interposed, has but little if anything to do with the question. The intention of it is obviously to protect the possession of an adverse claimant, without title, who has been in the exclusive and quiet possession for three years, under claim or color of title. After three years peaceable adverse possession, the owner cannot proceed under the statute to remove him, although his original entry was wrongful. In other words, it is a statute of limitations, and cannot be invoked to aid the complainant, if he fails to establish such a possession in himself, as to bring him within the terms of the statute.

It is a general rule, well established in the law of evidence, that the defendant may disprove what the plaintiff is required to prove, to establish his claim. This right is not affected by the provision in question. Now, while peaceable possession, in these proceedings, is *prima facie* evidence of an estate sufficient to support the complaint, the defendant may contradict the facts by which the relator attempts to show a title in himself; or, to use the language of SPENCER, J., in the *People* v. *Nelson* (13 J. R., 344), he may contradict the facts by which the relator attempts to make out his *estate*, and *may show that he has not such an estate* as would enable him to maintain the prosecution.

But the defendant having obtained possession without force, the question is, whether the relator had *constructive* possession at the time of the alleged forcible detainer, and doubtless the burden is on him to establish it; and it is certainly competent for the defendant to contradict the facts upon which the relator relies to establish it. Take the case

of a servant in the occupation of the owner's land; it may be shown in these proceedings, that his possession is that of his employer, and that the complainant, although occupying the owner's land, has no interest or possession whatever to entitle him to institute these proceedings.

This brings us to the real question, and that is, whether the relator had such an interest or possession, as to entitle him to maintain a prosecution against the defendant for a *forcible detainer* of the land on which his shop stood before it was removed by the defendant.

The *locus in quo* was occupied by a shop and platform hay-scales; and, as was offered to be proved, was parcel of 200 acres, granted to one Sands Higginsbotham by the State in May, 1827. Afterward, in 1860, Higginsbotham conveyed certain portions of it, including the premises in question, to Nathan B. Wilbur and others, and their successors, and survivors, *in trust*, to sell and convey to whoever would in their judgment, erect suitable substantial brick buildings, solely for business purposes for the beneficial growth of the village of Oneida. In October, 1861, the trustees contracted to sell to the defendant (Nehemiah Fields) a parcel of said lands, lying and being south of Phelps street, and on the east side of Main street, being lot number one, " being twenty-five feet in width on Main street, the same width in rear, and extending in depth from Main street to the feeder ;" the defendant agreeing on his part, " to erect, and inclose upon said lot number one, with a suitable brick building." These conveyances were rejected by the judge at the circuit, but they have been copied into the case, and the object of offering them was, to show that the *locus in quo* was actually included in the land bought by Higginsbotham from the State, and sold by the trustees to the defendant; and of course could be no part of the State land. Assuming, as I think we must, that the evidence excluded would have shown this, it effectually disposes of the principal fact relied upon to sustain the prosecution, and upon which the decision of this court mainly rested when the case was here before.

Without doubt, it was competent for the defendant to show that his contract included the *locus in quo*, and that he entered into actual possession of part, claiming the whole. The defendant occupies the same position as Higginsbotham would occupy if he had retained the title; and if the relator had no interest in the land as against the owner when he was held out by force, he could not have *constructive* possession within the meaning of the statute.

The case shows that, while Higginsbotham was in possession, and before he gave his trust deed, the shop, which was then owned by one Fish, was moved on to the spot it occupied when it was moved off by the defendant; that Fish got permission of Higginsbotham to move it there, with an understanding that it was to be moved off again whenever Higginsbotham required it; and that there was no agreement between them that Fish should pay rent or other compensation for the privilege of having his shop stand there. He also got permission of Higginsbotham to put down a platform for hay-scales, in front of the shop. He continued to occupy the shop and hay-scales, without any new agreement, until the defendant purchased the lot, on part of which they stood, for the purpose of erecting a block of buildings. The lot, as we have seen, was called number one, was uninclosed, and the shop and hay-scales occupied only a portion of it. When the defendant purchased the lot, he notified Fish of his purchase and of his intention to take possession of the whole of it, for the purpose of erecting a block of buildings, as he had agreed to do by his contract. The defendant proposed to prove that Fish, when told of this, stated to the defendant that he made no claims there, and that he would move the shop off, and upon this that Field went to work excavating, to put up his block. This evidence was excluded, to which there was an exception. The defendant also offered to prove that Field claimed the right to go into possession under Higginsbotham, and that Fish consented that he might excavate, and agreed to move off the building when they got up to

where the building was. This evidence was excluded, to which there was also an exception. It was then proved that Field did, in fact, commence excavating for his block, that he excavated up to the hay-scales, that Fish moved the hay-scales, and then the excavation went on up to the shop, as close as they could get; that Fish made preparations to remove his shop, and actually employed men to do it before he sold it to the relator; that when he sold the shop to the relator, he told him that he had made a bargain to move it off, the hay-scales being already moved off; and that he had made a contract to move off the shop.

The fact that Fish was going to put a block on the lot was a fact of general notoriety.

The complaint calls for twenty-six by twenty-eight feet of ground. The shop was twenty-eight by sixteen feet, and, of course, the *locus in quo* included the ground on which the hay-scales stood. The case shows that Fish occupied the building as a harness shop, and sold it to the relator on the 1st of January, 1863, but still retained possession by an arrangement with the relator, until the 10th or 12th of April following, when he delivered the key to the relator, leaving some few articles of personal property in the shop. The relator locked it up, and carried the key to his house, several miles distant. After that the relator went to the village several times, unlocked the shop, and examined it; talked of turning it round on the street, and proposed to rent it for a meat shop. There were several interviews between the relator and the defendant, in which the defendant offered to the relator to buy the shop, the relator then claiming that he had a right to occupy the premises. This claim was upon the ground, as I understand it, that it was State land. Failing to effect any arrangement with the relator, the defendant proceeded, in his absence, to remove it from the lot into the public highway. The relator, the same day, appeared and demanded re-possession of the premises, when he was kept out *by force*, according to the verdict of the jury. Without disputing the fact that force was employed to retain possession

by the defendant, I am clearly of opinion that, under the circumstances disclosed in the evidence, the verdict cannot be sustained.

The relator, being out of possession at the time of the alleged forcible detainer, was required by statute to show that he had, at least, the *constructive* possession. And as against a stranger to the title, we have seen that his prior occupation would be evidence of his right and sufficient to support the verdict; but as against the owner, entitled to the possession, it is clear that the relator would have no interest or estate in the premises.

But before proceeding to define the actual relation subsisting between these parties, there are several incidental questions which I propose to discuss.

It is said that Fish, and afterward the relator, was, at least, a tenant at will. Perhaps this is true, as such a tenancy was known at common law. But as there was never any conventional relation between Fish and Higginsbotham, or between the relator and the defendant, of landlord and tenant, neither of them was entitled to notice to quit. (*Benjamin* v. *Benjamin*, 5 N. Y., 383; *People* v. *Annis*, 45 Barb., 304.) A tenancy strictly at will, at common law, may be terminated at any time, either by an express declaration to that effect, or by any act of ownership inconsistent with the tenancy. The tenancy terminates immediately, and the only question of doubt is whether the tenant might enter afterward to remove his goods, without being a trespasser. (*Doe* v. *McKaeg*, 10 B. & C., 721; 1 Hilliard on Real Property, 279.) In the case of a lease, *strictly at will*, it has been held that an entry by the landlord, and notice to quit given to the tenant, will terminate the lease, revest possession in the landlord, though the tenant be not actually turned out. (*Curl* v. *Lowell*, 19 Pick., 25.) It is submitted that if there was any tenancy between Higginsbotham and Fish, it was strictly a tenancy at will at common law, and gave Fish no estate or right of possession which he could transfer to the relator; and that it was terminated by the very act of transfer under color of which

The People *v.* Fields.

the relator claims an interest in the premises. It is a well established rule that such a tenant cannot assign, though he may take a release. (Hilliard, 278.) And it is said that one placed on the land without any terms prescribed or rent received, is strictly a tenant at will. (Id.)

In my opinion no such *tenancy* is recognized by the Revised Statutes. Ample provisions are made for terminating tenancies, and giving to the landlord a summary remedy to recover possession after such determination. These are tenancies for years, at will and at suffrance, and we have seen that they can only arise where there has been a conventional relation of landlord and tenant between the parties. The relator certainly is in no better position than he would be if he had entered under a lease and held over after the termination of his estate by a notice to quit. The landlord may afterward lawfully re-enter or maintain ejectment, or proceed in the manner prescribed by law to remove such tenant. (1 R. S., 745, § 9.)

This is clearly declaratory of the rights of the owner at common law to re-possess himself of his property wrongfully withheld, if he can do so without a breach of the peace. The language of the statute is, that he "*may re-enter or maintain ejectment,* or proceed in the manner prescribed by law, to remove such tenant."

It is therefore clear upon this statute, that the right of *re-entry*, without suit, is reserved to the owners of real estate, as against tenants whose rights have been determined by notice, or in any other mode made known to the law.

That such a right existed at common law is beyond question, and it has been repeatedly recognized by the decisions of our own courts.

Every man, having a right of entry into lands, may assert the right, provided he commits no such acts of violence as will subject him to a criminal prosecution. (*Langdon* v. *Potter*, 3 Mass., 215.) And it was said by Spencer, J., in *Hyatt* v. *Wood* (4 John. R., 158), that in respect to real property, a person having a right of entry may, under the statute, enter peaceably upon one who is in possession without right by the

terms of the statute; but if the entry had been by breach of the peace, the defendant, it seems, might be indicted, but it would not render him a trespasser. (SAVAGE, J., in *Orser* v. *Storms*, 9 Cow. R., 687.) And this is clearly the rule to be deduced from the provisions of the Revised Statutes, which provide that "no entry shall be made into any lands or other possessions but in cases where entry is given by law, and in such case in a peaceable manner, not with *strong hand* or *multitude of people.*" This provision is a full recognition of the common law right of the owner to re-enter as against a person in possession without right, if he can do so without force. In *Livingston* v. *Tanner* (14 N. Y., 64), a tenant for life continued in possession without the consent of the owner after the determination of his estate, and it was held that he was not entitled to notice to quit; and *per* JOHNSON, J.: "In such a case the owner could always enter and dispossess the occupant, or maintain ejectment without notice, and could do so still" (p. 70). He may re-enter without force, but not with such force as to make him liable to an action for forcible entry. (*Newton* v. *Harland*, 1 Mann & Gr., 644; 4 Kent, Const. Ed. 130, Note.)

It is obvious, however, that the prosecutor must have gotten into possession under *some claim of right*, either as tenant or purchaser, to entitle him to the protection of the statute. Although the tenancy has expired, or the contract of purchase has been forfeited, the prosecutor, until he has been expelled by lawful proceedings, may claim to be in possession, seized of his original estate. And it has been held that all entries by the owner upon the lands in possession of a *tenant*, whose *tenancy has expired*, by such force as to subject him to an action for a forcible entry, are *unlawful*, within the meaning of the statute; and that the owner himself may by these proceedings be required to restore what he has thus acquired by force and violence. In such a case he may be found guilty of either forcible entry or detainer, although the two offenses are one and the same, as the forcible detainer will depend upon the question, whether there has been in

The People *v.* Fields.

fact a forcible entry.   When, however, the prosecutor *never was in as tenant* or *purchaser*, but by the *mere license* of the owner, it is clear, as I shall presently show, that his occupation does not draw to itself any estate or interest which the law recognizes as entitling him to restoration.   If so, any trespasser might defy the owner, when required to relinquish his occupation.

As to what constitutes a *forcible detainer*, the authorities are not agreed.   It is said that if a tenant for years after his term had expired, hold by force against the lessor, it is a forcible detainer.   (Cro. Jac., 199.)   So a mortgagor, after forfeiture, might be guilty of forcible detainer, by maintaining possession by force.   (3 Chit. C. L., 1121.)   But under our statutes the relations of the parties are changed, so that the prosecution could not be maintained until after foreclosure.   Perhaps the correct rule is stated in 1 Bishop's Cr. L., § 397.   The author says: "A man may use all reasonable and necessary force to defend his real and personal estate, of which he is in the actual possession, *yet if he undertakes to retain what he knows to be a wrongful possession by such force and numbers, as necessarily to excite terror, he is indictable.*   This offense is called in law a *forcible detainer*." Wharton says that this offense occurs, when a man takes or *keeps* possession of the lands or tenements *of another* by force, &c.   (Wharton's C. L., § 2013.)   And he says that a person who has a right, may enter and then maintain the proceedings against one *unlawfully* in possession.   (§ 2037.) And it was held in *Mugford* v. *Richardson* (6 Allen R., 76), that after the tenancy has been terminated by notice, the owner having gained peaceable possession of a portion of the premises, might use as much force as may be necessary to overcome the tenant's resistance to his taking possession of the residue.   And in the absence of the occupant, the owner having the right to the possession, may enter by forcing open the door, though the occupant expects to return.   (*Mussey* v. *Scott*, 32 Vt., 82; *S. P. Turner* v. *Meymott*, 1 Bing., 158 ; *State* v. *Pridgen*, 8 Ired., 84.)

In the form of indictment for a forcible *detainer*, it may be stated that the entry was *unlawful* and the *detainer* forcible (2 Bishop on C. Procedure, § 335); and it was held in the *State* v. *Johnson* (1 Dev. and Batt., 324), that neither by common law nor by statute can an indictment be maintained, when the entry is both peaceful and lawful; and that to authorize proceedings under the English statutes for a *forcible detainer*, the entry must be an *unlawful* entry, followed by a *forcible detainer*.

In some few cases, judges have advanced the doctrine that any entry, even by the person entitled to the possession, is unlawful, if made against the will of the party in possession. Such a view of the statute is clearly contrary to the decisions of our own courts and to the policy of the law. (See 1 Wash., on Real Estate, 540, 541.) Our statutes do not interfere with the common law right of justifying, in an action of trespass, *quare clausum fregit*, even a forcible entry (*Jackson* v. *Farmer*, 9 W. R., 201; *Hyatt* v. *Wood*, 4 John. R., 150; *Ives* v. *Ives*, 13 John. R., 235.)

There was never any doubt of the right of the owner to re-possess himself of his lands, if he found them vacant; and it seems to be well established, that leaving personal property on the lands does not preserve the possession (3 Bacon Ab., Forcible Entry (B); 2 Bishop on Cr. L., § 421); and it has been held that the mere act of nailing up the doors of a house does not amount to retaining possession. Such an act may show an intention that others should not possess, but it cannot be construed to be a continual possession (*Hopkins* v. *Buck*, 3 A. K. Marsh., 110.) But when the family or servants of the tenant are left in possession of a residence upon the lands, it seems that the owner cannot, after gaining possession without opposition, forcibly expel them. The subsequent force, by relation, is considered as a part of the original force, and the owner may be proceeded against for a forcible entry and detainer, although this was gravely questioned by some of the judges in *Newton* v. *Harland* (1 Mann. and G., 644). It is, however, quite clear, that leaving

a shop on the premises, which is the personal property of the tenant, is not to be regarded as the retention of the possession of the lands on which it stands. Thus, in *Field* v. *Higgins* (35 Maine R., 339), in a proceeding for a forcibly entry and detainer, to recover a building standing upon the land of the owner, by his consent, it was held that the action could not be sustained, although the complaint claimed the premises as well as the building.

In fact, the authorities show that the relator himself might have been proceeded against for a *forcible detainer*, if he had attempted to retain his possession by force. Having the title and the right of possession, and having taken possession of a portion of the lot, the defendant must be deemed *in constructive possession* of the whole. And the relator, having gone into the shop with a claim to occupy the land, could be proceeded against by the owner for an unlawful detainer. (*Benedict* v. *Hart*, 1 Cush., 487.) The *constructive possession* follows the legal title, or title deeds, and does not attach to one who is out of possession, and without title. When there is no *adverse holding*, the possession follows the property in the land, and is in him who has the title. (3 Wash., 118.)

Doubtless a man without right, may enter upon the owner's land and gain a title by *disseizin* in certain cases ; but to give such entry effect, as an adverse possession, it must be yielded to without opposition by the real owner. When, therefore, the owner protests against the acts of possession by the other party, they are unavailing. (3 Wash., 141 and 142.) And a mere possession, without a claim of right, gives no title, however long the same may be continued (Id., 141); that is, as against one who disturbs him in his possession, although he could not defend against the owner. (Id., 132.) As to him, the true owner may enter at any time upon such an occupation. (*La Frombois* v. *Jackson*, 8 Cow. R., 603, JONES, Chancellor.)

But in my opinion, the relator upon the facts disclosed on the trial, and offered in evidence, had no *interest* or *right* to *possession*, which would entitle him to maintain this prosecu-

The People *v.* Fields.

tion against the defendant, either for a forcible entry or detainer. Prior to the Revised Statutes the relator, to entitle him to this remedy, was required to show that he had an estate in the premises, for at least a term of years. Now he must have an estate of freehold, or for a term of years, or *some other right to the possession.* And the complaint must state that right. (2 R. S., 508, § 3.) It was not intended therefore, to include a person who happened to get into the possession of the owner's land without any right to it. A person in possession as a tenant at will, or sufferance, has an estate or interest in the land; and although he occupies beyond his term and holds on, is deemed to be in possession of the estate, or interest of which he was originally seized. By our statutes, such a tenant may be turned out of possession by summary proceedings after the expiration of the statutory notice. And if he attempts afterward to hold possession by force, the authorities are to the effect, that the landlord may proceed against him for a *forcible detainer.*

But the statute evidently contemplates, that the possession of the complainant should be founded upon *some right or interest* in the land to entitle him to its protection, and the complaint would be fatally defective if he merely alleged possession, without claiming a right to it.

We have already seen that a naked possession, without a claim of right, is nothing but an occupation, upon which the owner may enter at any distance of time; for he does no wrong to the occupant, who claims no interest in the land. (8 Cow. R., 603.) The complainant, if he has any right to the possession, has, doubtless, an *estate,* which is the appropriate legal signification to denote the *particular right* he has in the land. (Hilliard on Real Estate, 47.) That neither Fish nor the relator had any interest or estate in the land, is too obvious to require the citation of authorities. Fish's shop occupied this land by the *license* of the owner, which is a mere authority to enter upon the land, and do an act, or series of acts, without having any interest in the land, founded in personal confidence, and not assignable, and

The People *v.* Fields.

amounts to nothing more than an excuse for the act, which would otherwise be a trespass. (1 Hilliard, 235, note (b); 1 Wash., 542.) It does not extend to any one but the licensee. The death of either party will revoke it, and so would a transfer or alienation of the interest of the licenser. (Id., 545.) A parol license to enter upon another's premises to cut a drain, to construct a culvert, to flow the land, or to erect and maintain a house, is revocable, and confers no right whatever upon the licensee to occupy the premises after it is revoked. (Id., 546, 7.) Thus, in *Harris* v. *Gillingham* (6 N. H. Rep., 9), A, with the permission of B, erected a house on B's land, and then conveyed the house to C, but continued to reside in it. B conveyed the land on which the house stood to D, who requested A to leave the house, and, upon A's refusal, entered and tore down the chimneys, and put it in such a situation that A could not reside in it; and it was held that A could not maintain an action for breaking and entering upon him. So when the church parish permitted some of the parishioners to build sheds on the land owned by the parish, and occupy them, it was held that they might be torn down by the parish, without being responsible to the owners of the sheds. (*Bachelder* v. *Wakefield*, 8 Cush., 243.) In *Jackson* v. *Babcock* (4 J. R., 418), it was held that a written license by the owner to another to build upon and occupy his lands, was revocable, and gave to the licensee a mere license, or personal privilege to inhabit, and conferred no title to the possession. Such a license of the owner of the land to another, to erect a house on such land, for his use, operates only as an excuse for the act, and passes no interest in the land. (*Prince* v. *Case*, 10 Conn., 375.) It is not an easement. (*Bachelder* v. *Wakefield, supra.*) In *Haywood* v. *Miller* (3 Hill, 90), the plaintiff entered into possession of a house upon the defendant's premises, under a contract to work the defendant's land for a year, and it was held that it created no tenancy; and the defendant having entered the house, and put the plaintiff's furniture out, the plaintiff sued him in trespass, and failed to recover. The *possession* of the

plaintiff, in such a case, is the possession of the owner, and has been so held, repeatedly, by this court. (And see *Putnam* v. *Wise*, 1 Hill R., 248; *People* v. *Annes*, 45 Barb., 304.)

Fish having put his shop on the lot by the mere license of the owner, such license did not create a tenancy known to our laws; but the law applicable to *licenses* must be applied to his occupation. It seems unnecessary to say that *time* is of no importance in determining the rights of the parties. It would hardly be contended that a license to occupy for a day, or temporarily, would confer any right on the licensee to continue in possession. Any trespass committed upon the land thus occupied could be brought in the name of the owner. (*Putnam* v. *Wise, supra.*)

The rights of the parties are not changed because the license is continued for a week, a month, or for years. This is emphatically so when the licensee does not live upon the premises. When he has a residence upon another's land, the courts have showed a disposition to protect him against a *forcible entry* by various and contradictory theories of the law; but no case can be found where such protection has been extended to other erections, which are personal property. The contrary was expressly decided in *Dyer* v. *Chick* (52 Maine, 350).

I therefore come to the conclusion that Fish never had possession of the land upon which his shop stood, as against the owner, and could not maintain the proceeding against the defendant for forcibly removing the shop into the highway. And it is entirely clear upon the authorities, that he had no possession which he could transfer to the relator by a sale of the shop and which transfer of itself worked a revocation of the license; and the entry of the relator afterward was a trespass upon the possession of the defendant. He was a mere intruder, and of course had neither title nor possession to entitle him to maintain such a proceeding as this against the owner of the land.

The owner, not having parted with the title or possession,

The People *v.* Fields.

had a right to use all necessary and reasonable force against the relator, who attempted to dispossess him without right. (1 Bish. Cr. L., § 397; *Harrington* v. *People*, 6 Barb., 607; *The State* v. *Godsey*, 13 Ired., 348.)

If I have not mistaken the purport of the authorities, the relator must fail to sustain this proceeding upon several grounds.

(1.) If Fish was ever in possession, with such an interest as to entitle him to the protection of the statute, he voluntarily yielded it up to the defendant, when he allowed him to enter upon a part of the premises, with claim of title to the whole. (*Mugford* v. *Richardson*, 6 Allen, 76; and see *McDougall* v. *Sitcher*, 1 John. R., 42.)

(2.) But Fish having occupied the *locus in quo*, by the mere license of the owner, was never in possession as against the owner; but, if he was, he could not transfer any interest or right to possession to the relator; for, by the very act of transfer, his right, whatever it was, was terminated.

(3.) The relator, in order to sustain the verdict, must show that he had, at least, a *constructive* possession; and this, we have seen, he could not establish, as against the owner, who had been permitted by Fish to enter into a part of the lands before the relator purchased the shop.

In any aspect of the case, I regard the relator as a mere intruder upon the possession of the defendant, and, in my opinion, he has no more right to maintain this proceeding than any other trespasser who should intrude himself upon the premises.

The motion for a new trial should be granted, with costs to abide the event, and the motion for restitution denied without costs.

BACON and FOSTER, JJ., concurring.

Ordered accordingly.