## J. I. CASE PLOW WORKS CO., Appellant, v. FARMERS' CO-OP. UNION ELEVATOR CO., Respondent.

### (219 N. W. 888.)

(File No. 5917. Opinion filed June 16, 1928.)

*McNulty, Williamson & Smith,* of Aberdeen, and *T. J. Spangler* and *C. L. Morgan,* both of Mitchell, for Appellant.

*Gardner & Churchill,* of Huron, and *A. E. Hitchcock,* of Mitchell, for Respondent.

BROWN, J. Fred Nagel and J. E. Coovert were tenant farmers in partnership, or similar joint relation, and apparently had had intimate acquaintance with the hardships and privations experienced by many of that class in the Northwest during recent years. By written lease they had rented a section of land in Davison county from March 1, 1920, to March 1, 1921, agreeing to give two-fifths of the crops as rent for the cultivated land and $230 in cash for the grass land. With the consent of the owner they held over the following year. They failed to pay a part of the cash rent for the first year, and all of the cash rent for the second year, and were owing the owner, Mrs. Anderson, who lived in Albuquerque, N. M., about $390 for rent at the expiration of their term on March 1, 1922. In the fall of 1921 the owner employed Mr. Kibbe, a banker in Mitchell, to look after the land for her, and instructed him not to rent to Nagel & Coovert for the ensuing year, unless the delinquent rent was paid up.

On October 3, 1921, plaintiff took from Nagel & Coovert, as security for a debt of $1,900.40, a chattel mortgage covering an undivided three-fifths of all crops to be grown upon said land during the year 1922, and "all the machinery, live stock of every kind, make, color, and description, owned by Nagel & Coovert and by J. E. Coovert, together with all increase from above-described stock from the dating of this mortgage until same is fully paid and satisfied." The mortgage also contained a particular description of the various items of machinery and live stock. In the spring of 1922 negotiations were in progress between Kibbe and Nagel & Coovert for the lease of the land for the season of 1922. Kibbe refused to lease to them unless the delinquent cash rent was paid, and Nagel & Coovert were unable to raise the money, but they had proceeded to put a crop in on the land, and on May 27th had about 120 acres of corn and all the small grain planted. Shortly before this Kibbe had a conversation with plaintiff's manager

in Minneapolis, in which Kibbe stated that Nagel & Coovert would have to have cash to pay up the back rent and also to operate through the coming season, and the manager said he would send a man down to Mitchell to get it fixed up. On May 26th Robert Eaton called at Kibbe's bank in Mitchell on behalf of plaintiff. Coovert was there, and stated that he would have to have $400 to run him through the summer. Eaton wanted him to go ahead and farm the land, and Coovert asked him to advance the $400 and he refused. Eaton wanted Kibbe to advance the necessary funds, and this Kibbe declined to do, and also stated that no lease would be given to Coovert or Nagel until the delinquent cash rent was paid. No way out of this difficulty was found, and on May 27th Kibbe served on Nagel & Coovert a notice to vacate the premises for non-payment of rent. Nagel & Coovert formally surrendered possession, and Coovert entered into a written agreement on June 1, 1922, with Mrs. Anderson, whereby he agreed to work the place for her until December 1st for $50 a month and the right to raise chickens, stock, and garden on the place for his own use; Mrs. Anderson agreeing to pay all necessary expenses for hired help and harvesting the crops raised on the place. The crop was raised under this agreement, Coovert being paid the stipulated wages, and after the crop was harvested it was sold to defendant, and the proceeds (three-fifths of which exceeded the amount of plaintiff's mortgage) were paid to Mrs. Anderson.

This action is brought against defendant for conversion in purchasing the crop while plaintiff's mortgage was unpaid. At the close of all the evidence, plaintiff moved for a directed verdict, which was denied, and the case was submitted to the jury under instructions, to which no exception was taken by either party, stating in substance that if Nagel & Coovert, or either of them, remained in possession after March 1, 1922, with the unconditional consent or approval of the owner or her agent, such consent could not thereafter be revoked, and plaintiff's mortgage would be good as against the interest of Nagel & Coovert, or either of them, in the crop, but if Nagel & Coovert, or either of them, were not allowed to remain in possession with the unconditional consent of the owner or her agent, either expressly or impliedly given, the verdict should be for defendant. The jury found for the defendant on all the issues, and from the judgment entered on the verdict plaintiff appeals.

12

█ Appellant contends that the undisputed evidence shows that Nagel & Coovert held over with the consent of Mrs. Anderson, and therefore the crop in reality belonged to Nagel & Coovert; but we are of the opinion that there was a substantial conflict in the evidence on this point, and that the case was properly submitted to the jury.

█ While Nagel & Coovert went on planting the crop for the year 1922, Kibbe emphatically refused to give them any lease of the premises unless they would pay up the delinquent cash rent. There was no consent by the owner of the land to occupancy by Nagel & Coovert for the year 1922, until the agreement between the owner and Coovert was entered into on June 1st. Whatever Nagel or Coovert did upon the land prior to that time was done at their own risk, and when they surrendered possession on demand of the owner on May 27th all their interest in the crop terminated. Whether the surrender of possession was fraudulent as to appellant was a question for the jury, and has been determined against appellant. There is nothing necessarily inconsistent with good faith in the surrender of possession to the owner. While the tenants had planted the greater part of the crop, they evidently had done so with the hope that they would be able to raise the money to pay the back rent. They not only failed in this, but were in debt to the amount of $339 for the seed planted, and were unable to raise money to carry them through the working season. In this condition, and with the uncertainty attending the raising of a crop, the court cannot say that there was anything imprudent in the bargain they made with the owner in surrendering possession and accepting a contract for wages during the season, and where a tenant who has mortgaged his interest in a growing crop honestly surrenders, or by legal proceedings loses, possession before the maturity of the crop, the owner of the land becomes owner of the crop, free from any claim of the mortgagee. Woody v. Wagner, 89 Wash. 429, 154 P. 819; Gregg v. Boyd, 69 Hun, 588, 23 N. Y. S. 918; Gammon v. Bull, 86 Iowa, 754, 53 N. W. 340.

The judgment is affirmed.

BURCH, P. J., and POLLEY and SHERWOOD, JJ., concur. CAMPBELL, J., disqualified and not sitting.