DAVID W. GREGG, Appellant, *v.* WILLIAM BOYD, Respondent.

*Landlord and tenant — the right of an outgoing tenant to the away-going crop lost by a re-entry of the landlord under the terms of the lease.*

Where an outgoing tenant of a farm has the right to the away-going crop he, in contemplation of law, retains possession of the land upon which the crop is growing, and has the right to enter to harvest it; but if he surrenders the possession of the farm, including the land upon which the crop is growing, or if he is ousted from the same by judicial proceedings, or if, under the terms of his lease, the landlord re-enters and takes possession of the same, the tenant's right to the away-going crop is lost, and neither he nor his mortgagee of the crop can recover the same.

APPEAL by the plaintiff, David W. Gregg, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of Livingston county on the 26th day of October, 1892, upon a nonsuit ordered by the court at the Livingston Circuit.

*L. O. Reed,* for the appellant.

*J. H. Coyne,* for the respondent.

HAIGHT, J.:

This action was brought to recover the value of a quantity of wheat alleged to have been converted by the defendant.

On the 3d day of March, 1891, one William R. Curry leased of the defendant, William Boyd, a farm for the term of one year, with the privilege of three years, from the 1st day of April, 1891, at the annual rent of $400, one-half to be paid on the first day of October, and the other half on the first day of April thereafter. The lease was in writing, and contained the following: "The party of the second part is bound to divide all the wheat he puts in over ten acres, the year he leaves the farm." Curry entered into the possession of the farm under the lease, and about the first of October, sowed about thirteen and one-half acres of wheat, and thereafter and on the tenth day of October, executed and delivered to the plaintiff a chattel mortgage covering all of his interests in the wheat. Curry elected not to run the farm for the second and third years, gave notice to that effect and at the close of the year the defendant took possession and leased it to another person. On the first day of

October Curry paid upon the rent then due $197. He did not pay the installment falling due at the end of the year. In July following, at the instance of the plaintiff, he entered the premises, harvested the wheat and stored it in the barn on the premises. The defendant thereupon took possession of the wheat, threshed it, and upon demand of the plaintiff made upon his chattel mortgage, which he then had present and read to the defendant, he refused to surrender the wheat or any part thereof. Upon the trial evidence was given on behalf of the plaintiff to the effect that the former tenant had the same quantity of wheat growing upon the place, and that it was understood between Curry and the defendant that Curry should have one-half of all the wheat harvested over ten acres; that the former tenant came upon the premises during Curry's term, harvested the wheat, put it in the barn, threshed it and took it all away without giving him any portion thereof; that on complaining to the defendant of this conduct, the defendant told him to put in just the same number of acres that the former tenant had in and it would be all right, " that he could take the crop off that he put in." This evidence was controverted by the defendant.

It is claimed that upon the surrender of the premises by Curry at the end of the year the wheat then growing upon the premises became the property of the defendant. Wood in his work on Landlord and Tenant (ed. Banks Bros.), at section 560, says: " The right which an out-going tenant has to take an away-going crop, which is the crop sown during the last year of his tenancy, but not ripe until after the expiration of it, is sometimes given to him by the express. terms of the lease or agreement, and sometimes by the custom of the country. Such custom, or more properly speaking usage, has been held to be reasonable and valid and to apply equally to tenants by oral agreement, or by writing, or even by deed. Such a custom is good and just and for the benefit and encouragement of agriculture ; for that it is but reasonable that he who sows should reap the profit."

But we do not in this case understand that the rights of the parties are dependent upon a custom of the country, for it appears to us that they are disposed of by the terms of the lease. As we have seen, it contains the provision that " the party of the second part is bound to divide all the wheat he puts in over ten acres, the

year he leaves the farm." This provision inferentially contemplates the sowing of the wheat upon the farm and the gathering of the same. The lease ended on the 31st day of March, 1892. Wheat sowed in the fall would not mature until the following July. Ten acres is to be the tenant's, all over that amount was to be divided between the landlord and tenant. The fair and reasonable construction to be placed upon this provision is that the tenant should have the right to harvest the same, and that it remained his with the exception of the part over ten acres, which was to be divided with the landlord. If this provision was modified by the oral agreement referred to, then it would all belong to the tenant and the landlord would have no interest therein. It consequently appears to us that the wheat belonged to Curry and that the title was transferred by him to the plaintiff under the mortgage referred to, subject to the conditions imposed in the lease.

Was this wheat surrendered to the defendant at the termination of the lease? Boyd testified that Curry told him he might come and take possession of the premises; that he did take possession and relet the farm. Curry testified that he never had any conversation with the defendant on the subject of surrendering the thirteen acres of wheat to him; that there was nothing said upon that subject, except that he elected not to go on another year on the farm. We do not think the court upon this evidence alone would be justified in holding that there was a surrender. The most that can be claimed for it is that it raised a question of fact for the determination of the jury. (Wood's Landl. & Ten. § 499.)

But there is another question which appears to us to dispose of the case and to sustain the court in its direction of a nonsuit. Curry, in his testimony, conceded that he had not paid all of the rent due under the lease; that he had paid only the sum of $197. There was, therefore, due on the first day of April $203, which was not paid. The lease contained a provision that in case the tenant should fail to pay the rent, or any part thereof, the defendant might re-enter the premises. The defendant did re-enter, and now claims that he re-entered upon the whole of the premises because of the non-payment of the rent, and that he had the right so to do under the lease. When the outgoing tenant has the right to the away-going crop he, in contemplation of the law, retains possession of the lands upon which

the crop is growing; he has the right to enter to repair fences to protect the growing crop, and when it ripens to harvest it. In other words, he has the custody and control of it and retains the possession of the lands for that purpose. But if he surrenders possession of the farm, including that upon which the crop is growing, or if he is ousted from the same by judicial proceedings, or if under the terms of his lease the landlord re-enters and takes possession of the same, the tenant's right to the away-going crop is lost, and neither he nor his mortgagee can recover the same. If summary proceedings should be instituted to remove a tenant for the non-payment of rent during the term and he should be removed under a judgment entered in such proceedings, he could not thereafter re-enter upon the premises for the purpose of gathering maturing crops. And if the landlord re-enters under a power given in the lease, we fail to see how the situation would be changed, or the right of the tenant would 'be different from that where the re-entry was made under a judicial decree. In either case the possession is taken of the whole premises, including that upon which crops may be growing.

Before summary proceedings can be instituted to recover the possession of leasehold premises on account of the non-payment of rent, at least three days' notice, in writing, requiring the payment of rent and the possession of the premises must be served. (Code Civ. Pro. § 2231.)

But when six months' rent is in arrear upon a grant reserving rent, or upon a lease of real property, and the grantor or lessor or his heir, devisee or assign has a subsisting right by law to re-enter for the failure to pay rent, he may maintain an action to recover the property granted or demised without any demand of the rent in arrear or re-entry on the property. (Code Civ. Pro. § 1504.)

As we have seen, the first installment of rent became due on the first day of October. One hundred and ninety-seven dollars only was paid. A portion of the installment remained owing from that date, which was more than six months before the re-entry was claimed to have been made by the defendant. He, therefore, had the right to maintain ejectment without demand of the rent in arrear. (*Samson* v. *Rose*, 65 N. Y. 411–419.)

And if he could re-enter peaceably, no action was necessary.

In *Bliss* v. *Johnson* (73 N. Y. 529–534), ANDREWS, J., in delivering the opinion of the court, says : " The 'true owner of land wrongfully held out of possession may watch his opportunity and if he can regain possession peaceably may maintain it and lawfully resist any attempts by the former occupant to retake possession; nor will he be liable to be proceeded against under the statute of forcible entry and detainer.

" There can be no wrongful detainer by the true owner when the entry was both lawful and peaceable." (McAdam on Landl. & Ten. § 104; *People* v. *Fields*, 1 Lans. 241–244; *Mussey* v. *Scott*, 32 Vt. 82; *Sharp* v. *Kinsman*, 18 So. Car. 108.)

In *Abrahams* v. *Tappe* (60 Md. 317), it was held " that the mortgagee of the leasehold interest took it subject to all the conditions and covenants of the lease," " that the rent having been allowed to remain unpaid for more than one year and the landlord having by reason of that default and in the assertion of her right as landlord secured an actual and peaceable re-possession of the premises * * * the lease became absolutely forfeited and the mortgage, so far as it affected the premises, fell with it."

In 2 Platt on Leases, 331, it is said : " On re-entry the lessor is entitled to the emblements, and notwithstanding his taking advantage of the forfeiture, he retains unprejudiced any right of action that he may have for breaches of covenants committed by the lessee previously to the re-entry."

In *Fry & Co.* v. *Ford* (38 Ark. 246), it was held that " when a tenant abandons his crop and fails to perform the terms of his lease the landlord may gather * * * (the same) and take out of it and retain against the tenant's mortgagee of the crop, the expenses of preserving it from waste and preparing it for market, as well as the rent."

In *Davis* v. *Eyton* (7 Bing. 154), a lease had been granted on condition that if the lessee contracted a debt on which he should be sued to judgment which should be followed by execution, the lessor should re-enter as of his former estate. The lessor having re-entered after judgment and execution, it was held that he was entitled to the emblements. (See, also, *Debow* v. *Colfax*, 5 Halst. 128; Smith & Soden's Landl. & Ten. 290.)

The case of *Duffs* v. *Bangs* (122 N. Y. 423), is not in point. In

that case the landlord before re-entry had told the owner of the nursery stock that he might enter upon the premises in the spring and remove the same. The owner of the nursery stock relied upon this promise and did not remove it until the following spring, and it was held that under such circumstances the landlord was estopped from claiming ownership of the stock.

The judgment should be affirmed.

DWIGHT, P. J., LEWIS and MACOMBER, JJ., concurred.

Judgment appealed from affirmed.