WARNER HETFIELD, Respondent, *v.* JOHN D. LAWTON, Appellant.

*Emblements — a tenant voluntarily terminating his tenure of the land is not entitled to them.*

A tenant of a farm, whose tenancy was from year to year, beginning April first of each year, sowed a portion of the farm with rye in the fall of 1903. In March, 1904, he notified his lessor of his intention not to renew the lease, and stated to her that he reserved the crop of rye then in the ground, but such reservation was not assented to by the lessor. On March 21, 1904, the tenant surrendered the premises to a new tenant to whom the lessor had leased them. The lessor had made no attempt to terminate the lease.

*Held,* that the tenancy of the outgoing tenant terminated on April 1, 1904, and that he was not entitled to the crop harvested in 1904 from the rye sown by him in the fall of 1903.

APPEAL by the defendant, John D. Lawton, from a judgment of the County Court of Schuyler county in favor of the plaintiff, entered in the office of the clerk of the county of Schuyler on the 3d day of April, 1905, upon the decision of the court affirming a judgment of a justice of the peace of the town of Reading entered on the 9th day of November, 1904.

*O. P. Hurd,* for the appellant.

*H. C. Harpending* and *H. B. Harpending,* for the respondent.

Judgment affirmed, with costs, on the opinion of the county judge.

All concurred.

The following is the opinion of the county judge:

KEELER, J.:

The contention is over a crop of rye, which was sown by the defendant on the land of Mrs. Jane Lee in the town of Reading and harvested by the defendant.

Mrs. Lee made a written lease of the land (sixty-four acres) to the defendant, dated March 14, 1901, and the defendant entered into possession under the lease on the 1st day of April, 1901. The defendant's term, as provided in the lease, was: "For the term of one year from the first day of April, A. D., 1901, with the privilege of continuing the same from year to year so long as both parties may agree." The defendant by the lease was to pay Mrs. Lee the "yearly rental of one hundred and twenty-five ($125) dollars in cash, payable monthly."

The defendant continued in possession of the farm until some time in March, 1904, when without any notice to quit being given him by or on behalf of Mrs. Lee, he gave her notice that he did not care to occupy the farm another year, abandoned or left the farm and surrendered possession to the plaintiff, who, on the 21st day of March, 1904, rented the farm of Mrs. Lee for the term from April 1, 1904, to April 1, 1905.

Under this lease the plaintiff went into possession of the farm about April 1, 1904.

The defendant while occupying the farm, and in the fall of 1903, sowed on the farm fourteen acres of rye, it being the rye in question.

The defendant paid the rent as provided in the lease up to the time he gave up the premises, up to April 1, 1904.

When defendant notified Mrs. Lee that he would not occupy the premises for another year, he stated to her that he reserved the crop of rye, but such reservation was not assented to by Mrs. Lee, nor by any one on her behalf.

The plaintiff claims the ownership of the rye under his lease for the year 1905, aforesaid, and by assignment from Mrs. Lee.

The defendant claims that, as no notice to quit had been given him by Mrs. Lee before he sowed the rye, it became his property as emblements under his lease.

Mrs. Lee did not serve defendant with any notice to leave or quit April 1, 1904, because she was willing and expected he would keep the farm another year.

The defendant undoubtedly under the terms of his lease became a tenant from year to year.

In *Pugsley* v. *Aikin* (11 N. Y. 494) some of the statements of the court would carry the inference that such a tenancy when created by the agreement of the parties, can in no case be terminated, even at the end of any year, except by a six months' notice to quit given by one or the other of the parties to it. That case was decided in the year 1854.

But the more one studies the cases upon the question, both before and since that time, the more we think one will be convinced of the truth of the note in Gerard on Titles to Real Estate (4th ed. p. 188), where he says, discussing the termination of estates by notice : " The cases on the question of the time of notice, in the cases of a tenancy from year to year, are full of contradictions, and it is difficult to lay down any exact rule from them." (Citing cases.)

Very likely this conflict arises mainly from the many slight differences in the contract of leasing, varying in each case. The decision in *Pugsley* v. *Aikin* was upon demurrer to the complaint. It will not be profitable, nor pertinent to the case at bar, as we view it, to review these cases.

We think that the tenancy was legally terminated on the 1st day of April, 1904. The defendant gave notice that he did not want the premises another year, and abandoned them. The owner then accepted the tenancy as terminated ; she made an absolute lease of the farm for the ensuing year to another person, receiving rent, and the new tenant took possession. The owner could not under such circumstances hold defendant for the rent of 1904 under his lease. (*Goldberg* v. *Mittler*, 23 Misc. Rep. 116 ; *Coleman* v. *Fitzgerald Brothers Brewing Co.*, 29 id. 349.)

Although the defendant's lease was terminated on the 1st day of

April, 1904, yet, under certain circumstances, he might still hold the crop of rye which he had sown in the fall of 1903. Can he hold the rye under the circumstances of this case? If he holds the crop it must be as "emblements," and the law seems to be settled that, *if the tenancy is terminated before the crop can mature by the tenant's own act,* the tenant cannot hold these "emblements." McAdam, in his work on Landlord and Tenant (Vol. 1 [2d ed.], pp. 241, 242) says, speaking of emblements: "Tenants for life or for any other uncertain interest, on the determination of the tenancy *otherwise than by the tenant's own act* (italics are mine), are entitled to such crops," etc. And, again, on the latter page, "One whose estate is terminated by his own act or default is not entitled to emblements."

In a note to the case of *Batterman* v. *Albright* (11 L. R. A. 800, 801; 122 N. Y. 484), entitled "Emblements; right to as between landlord and tenant," the author says: "Where the tenancy is terminated by the act of the landlord, as by notice to quit, the tenant has a right to take away any of the productions of the land after his tenancy ends (*Oland* v. *Burdwick,* Cro. Eliz. 460), *but it is otherwise where the tenancy is put an end to by the act of the tenant himself.*" (Citing *Debow* v. *Colfax,* 10 N. J. L. 128; *Bulwer* v. *Bulwer,* 2 Barn. & Ald. 470; *Wicks* v. *Jordan,* 2 Bulst. 213; *Davis* v. *Eyton,* 7 Bing. 154.) In Wait's Actions and Defenses (Vol. 4, pp. 252, 253, 254), under the title, "Right to emblements and fixtures," the author says: "If a tenant quits or forfeits possession, or terminates his tenancy by his own act or fault, his crops belong to the landlord." (Citing *Carpenter* v. *Jones,* 63 Ill. 517; *Debow* v. *Colfax,* 10 N. J. L. 128; *Bulwer* v. *Bulwer,* 2 Barn. & Ald. 470; *Davis* v. *Eyton,* 7 Bing. 154.) In a note to the case of *Lafferty* v. *Schuylkill River East Side R. Co.* (3 L. R. A. 124; 124 Penn. St. 297) it is stated as to "emblements" (italics are mine): "On grounds of a public policy, *in order that an unforeseen termination of their interest* may not cause them to lose the fruits of their industry, tenants at will, as well as tenants for life, or their representatives, *except where the tenancy** ends by the voluntary act of the tenant,* are entitled when their tenancies end to emblements, that is, to the annual crops, produced

---

\* This word is "tendency" in the note.— [REP.

by the labor of the tenant, which have been sown before the time when the tenant has knowledge that his lease is to terminate." (Citing cases.)

*Samson* v. *Rose* (65 N. Y. 411) was an action by the owner of the land to recover some 109 bushels of buckwheat which the tenant, or sub-tenant, had sown and harvested. The owner had recovered possession of the land in ejectment, based upon the tenant's failure to pay rent, and had possession delivered to him after the buckwheat had been sown by the sub-tenant and before the crop had matured. The case was before the old Commission of Appeals, and DWIGHT, Com., discussing the case and the law of emblements, says (p. 416): "The whole law of emblements is derived from a rule of public policy. Its object was to encourage agriculture, by giving to such tenants as held a possession terminable upon some uncertain event a return for the capital and labor laid out and expended upon the land of another. There is no color for the view that any such allowance can be made in favor of one who has a fixed term, *or whose estate terminates* (though indefinite in its original duration) by his own act. (Italics are mine.) Thus, if an estate be given during widowhood, and the tenant marry while a crop is growing, she is not entitled to emblements." (See, also, *Harris* v. *Gregg*, 17 App. Div. 210; 45 N. Y. Supp. 364; 79 N. Y. St. Repr. 364.)

And in Taylor on Landlord and Tenant (9th ed. § 535), under the article of "Tenant's Right to Emblements," the author says: "But it is different where the tenancy is put an end to by the act of the tenant himself; for in such case he has no right to take away the productions of the land after his tenancy ends." (Citing cases.)

The illustration of a lease to continue "during widowhood" of the lessee, cited by Com. DWIGHT (*Samson* v. *Rose*) and also by Taylor on Landlord and Tenant (9th ed. § 535), is very like the case at bar. Probably the lessee did not know when she sowed the crop that she should marry before the crop matured, but she took the chances. Defendant may not have known he was going to terminate the tenancy at the end of the year when he sowed the rye, but he took the chances. In each case the termination of the tenancy was the act of the tenant. The duration of the tenancy in each case was uncertain *when the grain was sown.* In each case the

tenant could have continued the tenancy and then reaped the emblements.

I do not find any case, and none has been cited by counsel, holding that where the tenancy is terminated at the end of the year by the voluntary act of the tenant he is entitled to emblements, nor do we find any elementary writer laying down such a proposition.

The defendant Lawton by his own act terminated the tenancy, and the law as has been quoted seems to be conclusive that in such a case he cannot hold the rye in question.

It does not seem to us that it changes the rule of law that the defendant stated when he surrendered his term that he reserved the rye.

It is not claimed that the owner of the land assented to the surrender upon any such condition. His words would not control his acts and the interpretation which the law fixes upon them in the absence of consent.

It might, perhaps, be claimed that under the terms of the lease the defendant was bound to know before he sowed the rye whether or not the owner of the land was going to "agree" to let him remain another year. Be that as it may, he certainly ought to have known whether or not he was satisfied to remain as tenant for another year. When he sowed the grain he probably thought he would remain another year. To suppose otherwise would open the view (on defendant's theory of this case) for the commission of fraud. For instance, a tenant might secretly know he was going to quit at the end of the year, not communicate such knowledge to his landlord, and then go on and sow the whole tillable part of the farm to rye and wheat, yet hold the use of the land the next year for the growth of the crops, *without paying rent, and hold the crops besides*, the landlord supposing up to the end of the year that the tenant was going to continue for the year ensuing.

The defendant's counsel claims error in admitting the contents of the Hetfield letter without more proof as to its loss. If there was an error of the justice in that ruling it was harmless. When the defendant took the case, the defendant as a witness 'for himself, on direct examination, stated the contents of the absent letter in substance and almost in identical language with the evidence of the plaintiff. The only object of the letter was to show that the defend-

ant's quitting the farm was a voluntary act on his part, and that fact was conceded by both sides.

There was no question raised on the argument in this court, nor on the trial before the justice, but that the plaintiff, under his lease and assignment, acquired all of the rights of Mrs. Lee to the rye in question.

The judgment must be affirmed, with costs of the appeal to the respondent.