*383 OPINION OF THE COURT
Denise F. Molia, J.
Ordered that the motion by plaintiff for an order preliminarily enjoining the defendant, its agents, servant employees and all those claiming to act under or for defendant from entering onto the 52-acre field leased by plaintiff from defendant in the Hamlet of Calverton, Town of Riverhead, State of New York, located at the northwest corner of the intersection of Warner Avenue and Sound Avenue, is granted to the extent that through and including September 3, 2007 the defendant Wulforst Farms, LLC, its agents, servants, employees and all those claiming to act under or for the said defendant are hereby enjoined and restrained from entering onto the planted and farmed portion of the 52-acre field leased by the plaintiff, Jacob H. Rottkamp & Son, Inc., from the defendant, Wulforst Farms, LLC, which field is the subject of the instant litigation and which is located at the northwest corner of the intersection of Warner Avenue and Sound Avenue, in the Hamlet of Calverton, Town of Riverhead, State of New York.
The instant application was the subject of a hearing to extend or vacate a temporary restraining order (TRO) which had been imposed by order to show cause dated June 22, 2007 (Jones, J.). The hearing was commenced on July 2, 2007 and concluded on July 3, 2007.
In support of the instant application, the plaintiff called Jeffrey Rottkamp to testify. The witness stated that he is a farmer and vice-president of the plaintiff corporation, which is a family-owned business. It was in this capacity that he entered into an oral contract with Barry Bielof of Wulforst Farms, LLC to lease the subject 52-acre field for a period of one year commencing in April 2007 for the purpose of planting a crop of sweet corn. The oral contract, which has not been disputed by either party, provided for a payment of $3,000 for the ability to grow a crop of sweet corn during the season. The witness also testified that he had previously leased the same acreage over the past five to six years, including the past two or three years from the defendant herein.
In April 2007, the witness testified that based upon the aforesaid agreement, he planted his crop on the subject parcel. Rottkamp stated that he was advised by the defendant prior to planting any crop on the property that if the owner obtained necessary permits for the development of the land at issue, during the term of the lease, an access road may be cut through a *384 portion of the leased property to permit access to the development and construction of the clubhouse. The witness further testified that he was aware of the plan to excavate the access road, and, after having been advised of the location of such roadway, did not plant crops in the designated area. However, Rottkamp testified that since he was not advised of the proposed excavation and development of the area designated for the driving range, he planted his corn crop on that portion of the property in April of 2007. That portion of the planted corn crop will be harvested in late August/early September 2007.
Rottkamp testified that even if he were to plant a new corn crop on a different parcel as of the date of the hearing, such crop would not have sufficient time to grow before the time within which he must harvest the corn planted on the proposed driving range parcel of land to meet his product supply obligations. The witness further stated that his inability to supply corn to those persons, groups and organizations to which he has already promised product would result in financial hardship and serious and irreparable damage to his reputation as a local farmer.
In opposition to the application for injunctive relief, the defendant called Michael Owen, the owner of Owen Construction and construction manager overseeing the development of the subject property. He testified that during the second week of June 2007, he personally advised Rottkamp that the surveyor had begun to stake out the field and that excavation of the driving range area and roadway was imminent. Owen stated that during his conversation with Rottkamp, the latter was not concerned about the roadway excavation, but was concerned about the driving range excavation and the excavation of his corn crop.
Owen further testified that it was necessary to keep the defendant’s project on course in order to avoid falling behind in the scheduling of future construction phases. Owen stated that it was necessary for the driving range to be excavated during 2007, and that such excavation would take at least three months. The witness further testified that the defendant feared that if the excavation commenced in September, after the plaintiffs harvest, the driving range excavation would not be completed prior to the onset of winter. Moreover, Owen stated that the excavator informed him that if he had to return to the site in September and excavate into the winter months, the increased cost of the project would amount to $200,000.
*385 The defendant also called Barry Beil, a partner of Wulforst Farms, LLC, to testify. Beil initially testified that the delay in excavating the driving range would halt the construction of the clubhouse facility and parking area, essentially putting the whole project on hold. The only issue currently before this court involves the site of the driving range. The proposed clubhouse and parking areas are not part of the leased property nor the farmed area at issue. Later in his testimony, Beil acknowledged that the clubhouse and parking lot could be built prior to the excavation of the driving range, however, fill or material to be removed from the driving range was needed for the clubhouse project.
Beil stated that 12,000 cubic yards of fill are needed for the clubhouse area, yet he was unaware of the amount of fill already excavated from the roadway access area or the number of yards of fill already excavated and removed from the site since construction began in June. It is incredible that the entire project must be halted to wait for fill to be generated from the driving range, an area of approximately three acres. No other witness, including the construction manager for the defendant’s project, offered testimony to support such a claim. In fact, Beil acknowledged that the cubic yards of soil to be removed for the access road would exceed the cubic yards needed to stabilize the ground where the clubhouse is to be constructed, although he stated that he did not know if that fill could be used for the clubhouse. Moreover, no proof was offered to demonstrate that the excavation of the driving range could not be completed during 2007, after the harvesting of the plaintiffs crops, or that the excavation could not be completed prior to the onset of winter weather. Beil also testified on direct that he personally spoke with Rottkamp and that they had a lengthy conversation wherein Rottkamp informed Beil that the clubhouse wasn’t an issue, but that he was unaware of the driving range excavation. Beil stated it was unfortunate but “he was clear about what needed to be done.” Yet, on cross examination, Beil was asked “when was the very first time you personally told Mr. Rottkamp that he had to get off some portion of the field because construction was going to start?” (Transcript at 136.) Beil responded: “I never did ... I asked Mike Owen to meet with Mr. Rottkamp.” (Transcript at 136-137.)
The testimony of the aforementioned three witnesses comprised all of the testimony provided at the hearing.
All witnesses agreed that the establishment of an access road was known to the parties when they entered into the agreement *386 for the 2007 season. Although plaintiff leased a total of 52 acres, some portions of that acreage, i.e., the access road, have already-been excavated. The parties have agreed that the issue to be addressed by this proceeding is limited to the disputed three acres out of the total 52 acres leased by plaintiff, with such three acres located within the 30 to 32 acres where corn has already been planted by the plaintiff. The three acres at issue is the area where the defendant seeks to construct a driving range. The planted crop is scheduled to be harvested during approximately the third week of August. As Rottkamp testified, said harvest constitutes a food product which has already been promised to various farm stands, as well as fire departments, church groups, and civic groups to be sold at various summer fairs, festivals, bazaars, picnics and community events.
Pursuant to a continuing business relationship between the parties, the plaintiff annually would lease a portion of defendant’s property at the subject site for the planting of sweet corn. Over the years the defendant has acquired a reputation as a reliable producer of local sweet corn in Suffolk County, entering into agreements with various farm stands, organizations and entities to supply corn for various community events. To date plaintiff has always been successful in meeting these obligations. The inability of plaintiff to meet its obligations in August/ September 2007 would, as Rottkamp stated, reflect negatively on plaintiffs reputation and business in the future.
While the plaintiff may be monetarily compensated for the loss of revenue generated by the sale of corn from this year’s harvest, the plaintiff would have difficulty recovering from the damage to the reputation he and his family have worked hard to acquire and maintain for reliability and quality product, if he failed to meet the demand for product he promised to supply this year upon which others are relying. Such damage to plaintiffs good name and reputation in the community cannot be adequately compensated by a monetary award. Rottkamp’s word to supply product is clearly important to his continued reputation for quality and reliability with his customers.
Plaintiff greatly values the reputation it has enjoyed in the Calverton farming community since 1967. Rottkamp has already promised a variety of local service, charitable and religious organizations that it would supply corn to a variety of summer festivals and events held throughout August and September. The testimony of plaintiffs witness demonstrated that a corn crop takes a certain time to grow before it can be harvested. To *387 meet the demand of its customers in August and September, the crop had to have been planted by April. Therefore, if plaintiff were to lose the disputed three acres from where the proposed driving range is to be located, he would be unable to plant a crop in a replacement field that could be harvested in time to meet his August and September contractual obligations. Moreover, Rottkamp also stated that although the driving range may only occupy three acres, he would be unable to save the corn planted beyond the driving range since the rolling sprinkler system would not be able to cross over the excavated land to his planted crop beyond the driving range. He stated that he could lose anywhere from 12 to 20 acres of his corn crop (transcript at 26). Under the circumstances of the instant matter, were the plaintiff to lose the crop from the subject field, it would be impossible for plaintiff to duplicate the lost crop to be harvested in August and September.
A primary consideration in the instant matter is the common-law doctrine of emblements, which is generally encountered in agrarian matters such as the instant proceeding. “Emblements are defined in Hamilton v. Austin (36 Hun, 138; affd., 107 N.Y. 636) as ‘the annual product or fruit of things sown or planted’ ” (Heller v Amawalk Nursery, Inc., 253 App Div 380, 382 [2d Dept 1938]). The doctrine of emblements is applicable whenever one who farms land owned by another has been given the right to do so for an indefinite term, and also gives the farmer the right to harvest any annual crop already sown before the indefinite term is brought to an end by notice or another event. Here, Rottkamp planted all of the corn on the subject field prior to being informed by Owen, during the third week of June 2007, that the driving range would be excavated upon the land where plaintiff had already planted his crop. Under such circumstances, the testimony establishes that the plaintiff is entitled under the doctrine of emblements to harvest the crop he planted prior to receiving the notice by defendant.
It is well settled that the remedy of a preliminary injunction is a drastic one which should be granted sparingly. (McLaughlin, Piven, Vogel v Nolan & Co., 114 AD2d 165, 172 [1986]; Wm. Rosen Monuments v Madonick Monuments, 62 AD2d 1053 [1978].) Such relief will not be granted unless a clear right is established under the law and undisputed facts, and the burden of demonstrating such undisputed right rests upon the movant. (County of Orange v Lockey, 111 AD2d 896, 897 [1985].) To obtain a preliminary injunction, a plaintiff must meet the heavy *388 burden of demonstrating, by clear and convincing evidence, that (1) the plaintiff is likely to succeed on the merits of the action; (2) the plaintiff will suffer irreparable injury absent the issuance of a preliminary injunction; and (3) the balance of the equities favors the plaintiff. (See, IVI Envtl. v McGovern, 269 AD2d 497, 498 [2000]; Price Paper & Twine Co. v Miller, 182 AD2d 748, 749 [1992].)
By establishing the right to be free of interference from the defendant until the time that the crop may be harvested under the doctrine of emblements, the plaintiff is likely to be successful on its claim that the oral lease between the parties was for the entire growing season and until such time as the crop can be properly harvested.
Evidence of potential damage to a business reputation is a sufficient basis to establish irreparable injury justifying the grant of preliminary injunctive relief. (Konishi v Por Kung Lin, 88 AD2d 905 [1982].) Damage to business reputation and good will can be difficult or impossible to quantify and demonstrates irreparable harm, as opposed to injury that can be compensated with damages (see, CanWest Global Communications Corp. v Mirkaei Tikshoret Ltd., 9 Misc 3d 845, 872 [2005], citing Register.com, Inc. v Verio, Inc., 356 F3d 393 [2d Cir 2004]).
Rottkamp’s testimony of its premier reputation as a reliable supplier of excellent quality Long Island sweet corn has not been disputed. Nor has the fact that the defendant has previously agreed to allow plaintiff to plant and harvest a corn crop on the subject parcel in order to supply product to customers as discussed above. Without the instant relief, it has been shown that the plaintiffs inability to fulfill its supply agreements with its numerous customers, as well as its inability to purchase corn of comparable quality from others to meet its supply agreements, would result in a severe and irreparable injury to the plaintiff’s business reputation. As a family-owned business engaged in farming in Suffolk County for nearly 40 years, the plaintiff has become known for providing a quality agricultural product for consumption at various local summer events. In the past, the plaintiff has been able to meet the demand for corn based upon the harvesting of a certain predetermined acreage. To now destroy three or more acres of already planted corn, which constitutes a significant portion of the total crop that plaintiff has contracted to sell, would prevent plaintiff from meeting its business obligations for September 2007. Such breach of customer satisfaction is likely to adversely affect the *389 plaintiffs reputation in the local community and. may result in past and present customers seeking new suppliers of sweet corn in the future.
The defendant has contended that it would suffer damage if it could not excavate the driving range area prior to the construction of the clubhouse facility. The court has already found this position to be incredible and unsupported by the evidence. The evidence supports the conclusion that upon a balancing of the equities, the plaintiff, with its potential loss of good will in the community, is favored.
Accordingly, upon a review of the pleadings and the testimony of the parties and witnesses, the court finds that the plaintiff has established its entitlement to a preliminary injunction permitting the plaintiff the right to bring the entire subject corn crop, including that portion located in the disputed three acre area, to harvest.
At the close of the hearing, a motion was made by the plaintiff to convert the instant motion for a preliminary injunction to one for summary judgment. That application is denied.
Ordered that the preliminary injunction is granted and shall continue until September 3, 2007 at which time the injunction shall terminate and the matter shall proceed on the issue of damages. Ordered, that within five days of the date of this order, the plaintiff shall post a bond or undertaking in the amount of $50,000 with the Treasurer of Suffolk County.