Van Amburgh v Boadle (2024 NY Slip Op 04168)

Van Amburgh v Boadle

2024 NY Slip Op 04168

Decided on August 8, 2024

Appellate Division, Third Department

Pritzker, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:August 8, 2024

CV-23-0434

[*1]Phyllis Van Amburgh et al., Appellants,
v
Patricia Boadle et al., Respondents.

Calendar Date:March 27, 2024

Before: Egan Jr., J.P., Aarons, Pritzker, Lynch and Fisher, JJ.

Salazar and Erikson, LLP, East Greenbush (Dana L. Salazar of counsel), for appellants.
Capezza Hill, LLP, Albany (Abby McCormick-Foley of counsel), for respondents.

Pritzker, J.
Appeal from an order of the Supreme Court (James H. Ferreira, J.), entered August 27, 2021 in Schoharie County, which granted defendants' motion to dismiss the complaint.
Plaintiffs and defendants entered into a five-year Organic Farm Land Lease Agreement (hereinafter the lease agreement) for the use of two parcels of agricultural land owned by defendants in the Town of Cherry Valley, Otsego County, and the Village of Sharon Springs, Schoharie County, effective January 1, 2016 to January 1, 2021. As relevant here, the lease agreement also provided that plaintiffs or defendants could terminate the lease agreement upon 90 days' notice.
In the fall of 2019, plaintiffs planted crops on the Sharon Springs land that, according to them, could not be harvested until September 2020. On February 1, 2020, defendants exercised the early termination provision in the lease agreement, gave plaintiffs notice that their tenancy would end May 1, 2020 and advised them to harvest their crops in the spring. Plaintiffs responded that they could not meet defendants' deadline, as the crops would not be ready for harvest until the fall of 2020. In May 2020, after plaintiffs' tenancy terminated, herbicide was sprayed on the land, killing plaintiffs' crops.
Plaintiffs commenced this action in September 2020 asserting causes of action for, among other things, breach of contract and conversion.[FN1] Defendants thereafter moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7). Over plaintiffs' opposition, Supreme Court granted defendants' motion. This appeal ensued.
Initially, this appeal comes to us by way of a motion to dismiss pursuant to CPLR 3211 and, thus, "we must accept the facts alleged in the complaint as true and accord the nonmoving party the benefit of every possible favorable inference and determine only whether the facts as alleged fit within any cognizable legal theory" (Singe v Bates Troy, Inc., 206 AD3d 1528, 1530 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; see Matter of Lewis v Dagostino, 199 AD3d 1221, 1222 [3d Dept 2021]). On a motion pursuant to CPLR 3211 (a) (1), "[d]ismissal is appropriate where the documentary evidence utterly refutes the petitioner's allegations, conclusively establishing a defense as a matter of law" (Salus v Berke, 221 AD3d 1390, 1391 [3d Dept 2023] [internal quotation marks and citations omitted]). "Additionally, where, as here, evidentiary material is considered on a motion to dismiss, the criterion is whether the proponents of the pleadings have a cause of action, not whether they have stated one" (Cavosie v Hussain, 215 AD3d 1080, 1081 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see CPLR 3211 [a] [7]).
Plaintiffs initially contend that Supreme Court improperly dismissed their cause of action sounding in breach of contract because defendants' actions constitute a violation of the doctrine of good faith and fair dealing which undermines the entire purpose [*2]of the contract. "[T]o recover for a breach of contract, a party must establish the existence of a contract, the party's own performance under the contract, the other party's breach of its contractual obligations, and damages resulting from the breach" (Collyer v LaVigne, 202 AD3d 1335, 1339-1340 [3d Dept 2022] [internal quotation marks and citations omitted], lv dismissed 39 NY3d 925 [2022]; see New York Mun. Power Agency v Town of Massena, 188 AD3d 1517, 1519 [3d Dept 2020]; Vestal v Pontillo, 158 AD3d 1036, 1041 [3d Dept 2018]). Significantly, a covenant of good faith and fair dealing "is implied in all contracts of this state and embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" (Integrity Intl., Inc. v HP, Inc., 211 AD3d 1194, 1198 [3d Dept 2022] [internal quotation marks and citations omitted]; see 23A Props., Inc. v New Mayfair Dev. Corp., 212 AD3d 900, 902 [3d Dept 2023]; Michaels v MVP Health Care, Inc., 167 AD3d 1368, 1373 [3d Dept 2018]). "While the duties of good faith and fair dealing do not imply obligations inconsistent with other terms of the contractual relationship, they do encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included" (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002] [internal quotation marks and citations omitted]; see Integrity Intl., Inc. v HP, Inc., 211 AD3d at 1198-1199).
In plaintiffs' complaint, they alleged that the parties entered into "an Organic Farm Land Lease Agreement" and that the lease agreement involved "the use of agricultural land." As such, we must accept as true that the purpose of the lease agreement related to the seeding, cultivation and harvesting of crops based on the reasonable inferences derived through the pleading (see Eccles v Shamrock Capital. Advisors, LLC, ___ NY3d ___, ___ 2024 NY Slip Op 02841, *13 [2024]; Audthan LLC v Nick & Duke, LLC, ___ NY3d ___, ___ 2024 NY Slip Op 02223, *5 [2024]). Furthermore, looking beyond the pleadings, although the purpose was not expressly stated in the rudimentary single-page lease agreement, the terms include language defining "agricultural land" as "the land defined as that portion which is under active production of crops or is being grazed" and further include a provision that organic fertilizers must be used on the land. Moreover, there is no dispute between the parties as to the purpose of the lease agreement. Indeed, defendants admit the purpose in the opening line of their brief by stating that plaintiffs leased the land "for the planting and harvesting of crops," and further, in Supreme Court, defendants referred to the property as "leased farmland."[FN2]
Based on the foregoing, the purpose of the lease agreement was clear and, since both parties were aware that the land was to be used to seed, maintain and harvest the crops[*3], defendants were under a contractual duty to allow plaintiffs to fulfill this purpose under the implied covenant of good faith and fair dealing (see Hilgreen v Pollard Excavating, Inc., 210 AD3d 1344, 1348-1349 [3d Dept 2022]; see also Singh v City of New York, 40 NY3d 138, 145-146 [2023]; Cordero v Transamerica Annuity Serv. Corp., 39 NY3d 399, 409-410 [2023]). Against this backdrop, both parties had the express right to terminate the lease agreement with 90 days' notice. Therefore, plaintiffs' right of possession would extinguish upon rightful termination and, as such, without an express or implied obligation, plaintiffs would be unable to recover on a breach of contract theory (see generally ABN AMRO Bank, N.V. v MBIA Inc., 81 AD3d 237, 244 [1st Dept 2011], affd 17 NY3d 208 [2011]). However, given the nature of the agricultural lease agreement, the implied covenant of good faith and fair dealing and the theory of emblements must be harmonized with the mutual termination provision.
As a general matter, the doctrine of emblements is derived from public policy expressly designed to prevent unfair dealing and unjust treatment (see Samson v Rose, 65 NY 411, 416 [1875]; Hetfield v Lawton, 108 App Div 113, 116 [3d Dept 1905]). Here, the cereal crops at issue are alleged to be emblements as they are "the annual product or fruit of things sown or planted" (Heller v Amawalk Nursery, Inc., 253 App Div 380, 382 [2d Dept 1938] [internal quotation marks and citation omitted], affd 278 NY 514 [1938]; accord Jacob H. Rottkamp & Son, Inc. v Wulforst Farms, LLC, 17 Misc 3d 382, 387 [Sup Ct, Suffolk County 2007]). Unharvested crops with perennial roots are considered realty, "and their ownership follows the ownership of the land" (Triggs v Kahn, 167 AD2d 680, 681-682 [3d Dept 1990]). Pursuant to the doctrine of emblements, "one who holds land for a period of time which is of uncertain duration may remove from the land, after termination of his [or her] tenancy, the [after-grown] crops or emblements which were planted before such termination" (id. at 681; see Hetfield v Lawton, 108 App Div at 115-117). If "the duration of the tenancy is for a certain period, the doctrine of emblements is not applicable" (Triggs v Kahn, 167 AD2d at 682). Conversely, as is the case here, the invocation of the early termination clause had the effect of rendering the lease agreement indefinite in length, thus we find the doctrine of emblements to be applicable (see id. at 681-682; Hetfield v Lawton, 108 App Div at 115-117). Further, it is our opinion that, given the purpose of the lease agreement as well as the early termination provision, the doctrine of emblements created an implied contractual term granting plaintiffs a right of reentry to harvest their crops in the event that defendants exercised the early termination provision.
Notably, the facts alleged in the complaint show that the destroyed crops were planted prior to defendants giving notice to terminate.[FN3] Nevertheless, defendants [*4]were within their rights under the early termination provision of the lease agreement to terminate early with 90 days' notice. Thus, even though the lease agreement was properly terminated, the destruction of the crops deprived plaintiffs of their emblements. In our view, defendants' right to terminate the lease agreement and plaintiffs' entitlement to emblements are neatly reconciled with a nonexclusive implied right of reentry,[FN4] permitting the after-grown crops to be cared for and harvested. This preserves defendants' right to exercise the early termination clause while also adequately accounting for plaintiffs' rights as they relate to emblements. Defendants' actions in exercising the early termination provision without allowing plaintiffs to reenter the land to care for and harvest their crops set forth a breach of the implied covenant of good faith and fair dealing (see generally 23A Props., Inc. v New Mayfair Dev. Corp., 212 AD3d at 902-903; Hilgreen v Pollard Excavating, Inc., 210 AD3d at 1348-1349; Dinwiddie v Jordan, 228 SW 126, 128 [Tex Commn App 1921]). Granting plaintiffs every possible favorable inference as we must, they have "pleaded facts sufficient to allege" a breach of contract cause of action (Cavosie v Hussain, 215 AD3d at 1083 [citations omitted]; see Eccles v Shamrock Capital Advisors, LLC, 2024 NY Slip Op 02841 at *13).
Significant to this conclusion is that, here, without a right of reentry, the lease agreement could be rendered illusory (see Bray Terms. v Grand Union Co., 74 AD2d 965, 966 [3d Dept 1980]). For instance, defendants could terminate the lease agreement at any time, even after week one, despite funds and efforts having already been expended by plaintiffs. A right of reentry would preserve both parties' rights, i.e., the right to terminate and the right to emblements. Additionally, the fact that plaintiffs also set forth a conversion cause of action does not alter this analysis. Indeed, in some situations a proper plaintiff may be barred from bringing a conversion claim due to the three-year statute of limitations but a breach of contract action, with a six-year statute of limitations, could still be viable (see Holser v Geerholt, 193 AD3d 1302, 1303 [3d Dept 2021]; see also CPLR 213 [2]; 214 [3]). Notably, we believe the contractual cause of action is not just viable, but an essential protection for farmers who lease land for consideration and expend great effort tending to the land, thus reasonably anticipating that they will have the opportunity to reap what they sow.
Plaintiffs also assert that Supreme Court improperly dismissed their cause of action sounding in conversion based on the doctrine of emblements. "Conversion is an unauthorized exercise of dominion and control over property by someone other than the owner, where such control interferes with and is in defiance of the superior possessory right of the owner or another person" (Cuprys v Volpicelli, 170 AD3d 1477, 1478 [3d Dept 2019] [internal quotation [*5]marks and citation omitted]; see Jackie's Enters., Inc. v Belleville, 165 AD3d 1567, 1573 [3d Dept 2018]). As addressed above, the cereal crops at issue are emblements and the doctrine is applicable to an indefinite lease such as the one at bar (see Triggs v Kahn, 167 AD2d at 681-682; Heller v Amawalk Nursery, Inc., 253 App Div at 382; Hetfield v Lawton, 108 App Div at 115-117). Applying these principles, plaintiffs have alleged a viable conversion cause of action (see CPLR 3211 [a] [7]; Cavosie v Hussain, 215 AD3d at 1081). Plaintiffs alleged that they planted the cereal crops prior to receiving notice of defendants' early termination of their tenancy, and that such crops would be ready for harvest in September 2020 — a few months before the scheduled January 1, 2021 expiration of the lease agreement. Despite the five-year lease term, the early termination provision rendered the duration of plaintiffs' tenancy uncertain (see Jacob H. Rottkamp & Son, Inc. v Wulforst Farms, LLC, 17 Misc 3d at 387). As such, plaintiffs have adequately alleged a possessory interest in the cereal crops because, under the doctrine of emblements, they retained a right to harvest and take away those crops after defendants terminated their tenancy early (see Hetfield v Lawton, 108 App Div at 115-116). Together with plaintiffs' allegation that defendants destroyed the cereal crops, plaintiffs' conversion cause of action was improperly dismissed (see Beck v McLane, 129 App Div 745, 748 [4th Dept 1909], affd 198 NY 567 [1910]; compare Barber v Crout-Woodard, 224 AD3d 966, 969 [3d Dept 2024]). The parties' remaining contentions, to the extent not addressed above, have been evaluated and found to be unavailing.
Lynch and Fisher, JJ., concur.
Aarons, J. (concurring in part and dissenting in part). We agree with the majority that plaintiffs' conversion cause of action survives defendants' motion based upon the doctrine of emblements. Emblements are the annual product of crops sown or planted that are treated as personal property even before they are harvested (see LeBarron v Babcock, 122 NY 153, 156 [1890]; Heller v Amawalk Nursery, Inc., 253 App Div 380, 382 [2d Dept 1938], affd 278 NY 514 [1938]; see also UCC 2-105 [1]; 2-107 [2]). "The doctrine of emblements is applicable whenever one who farms land owned by another has been given the right to do so for an indefinite term, and also gives the farmer the right to harvest any annual crop already sown before the indefinite term is brought to an end by notice or another event" (Jacob H. Rottkamp & Son, Inc. v Wulforst Farms, LLC, 17 Misc 3d 382, 387 [Sup Ct, Suffolk County 2007]; see Triggs v Kahn, 167 AD2d 680, 681 [3d Dept 1990]; Hetfield v Lawton, 108 App Div 113, 115-117 [3d Dept 1905]). Because the facts alleged here meet the requirements of the doctrine, the right to the unharvested cereal crops on the subject property remained with plaintiffs when their tenancy terminated, rather than reverting to defendants (see Harris [*6]v Frank, 49 NY 24, 30-31 [1872]; see also Samson v Rose, 65 NY 411, 424 [1875, Reynolds, J., dissenting]).
In our view, however, Supreme Court appropriately dismissed plaintiffs' contract cause of action. As an initial matter, the complaint does not "allege the provisions of the [lease agreement] that were allegedly breached," and, as a result of that omission, plaintiffs did not "adequately plead a cause of action for breach of contract" (Woodhill Elec. v Jeffrey Beamish, Inc., 73 AD3d 1421, 1422 [3d Dept 2010]; see Sutton v Hafner Valuation Group, Inc., 115 AD3d 1039, 1042 [3d Dept 2014]; compare Beck v McLane, 129 App Div 745, 747 [4th Dept 1909], affd 198 NY 567 [1910]). In response to defendants' motion, plaintiffs cast their contract theory as one premised on the implied covenant of good faith and fair dealing, which is an implicit contractual obligation that "encompasses any promise that a reasonable promisee would understand to be included" (Michaels v MVP Health Care, Inc., 167 AD3d 1368, 1373 [3d Dept 2018] [internal quotation marks and citations omitted]). In that regard, a party may be in breach of the implied covenant "when it exercises a contractual right as part of a scheme to realize gains that the contract implicitly denies or to deprive the other party of the fruit or benefit of its bargain" (Elmhurst Dairy, Inc. v Bartlett Dairy, Inc., 97 AD3d 781, 784 [2d Dept 2012] [internal quotation marks, brackets and citation omitted]; accord Michaels v MVP Health Care, Inc., 167 AD3d at 1373). "No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship" (Murphy v American Home Prods. Corp., 58 NY2d 293, 304 [1983]; accord Cordero v Transamerica Annuity Serv. Corp., 39 NY3d 399, 410 [2023]). Thus, to withstand a pre-answer motion to dismiss a cause of action for breach of the implied covenant, a plaintiff "must allege facts sufficient to demonstrate that the plaintiff reasonably understood the contract or contractual provision at issue to state a duty to take or refrain from taking a particular action" (Cordero v Transamerica Annuity Serv. Corp., 39 NY3d at 410 [internal quotation marks and citation omitted]).
Applying these principles to the pleading and the papers supplied in connection with defendants' motion (see CPLR 3211 [a] [7]; Cavosie v Hussain, 215 AD3d 1080, 1081 [3d Dept 2023]), plaintiffs do not have a cause of action for breach of the implied covenant of good faith and fair dealing. To begin, "the implied obligation is only in aid and furtherance of other terms of the agreement of the parties, and [plaintiffs have] not alleged any applicable term of the lease to support it" (Trump on the Ocean, LLC v State of New York, 79 AD3d 1325, 1326 [3d Dept 2010] [internal quotation marks and citations omitted], lv denied & dismissed 17 NY3d 770 [2011]; see Tompkins Fin. Corp. v John M. Floyd & Assoc., Inc., 144 AD3d 1252, 1257 [3d Dept 2016]). Moreover, although there is no dispute [*7]that, during their tenancy under the lease agreement, plaintiffs had a right to harvest their annual crops (see Baumann v City of New York, 227 NY 25, 29-30 [1919]), plaintiffs allege no facts from which to infer that the parties reasonably understood that any of their contractual rights and duties would subsist after defendants' exercise of the mutual termination provision terminated plaintiffs' tenancy (see CPLR 3211 [a] [7]; New York Tel. Co. v Jamestown Tel. Corp., 282 NY 365, 372 [1940]; compare Reeder v Sayre, 70 NY 180, 181, 189-190 [1877]).
Additionally, the lease agreement — specifically, the mutual termination provision — confirms that plaintiffs cannot prove a contract existed between the parties at the relevant time, negating an essential element of plaintiffs' cause of action (see CPLR 3211 [a] [1]; Collyer v LaVigne, 202 AD3d 1335, 1339-1340 [3d Dept 2022], lv dismissed 39 NY3d 925 [2022]). There are no conditions attached to the mutual termination provision, which reads in full, "This agreement may be terminated by either party upon 90 days['] notice."[FN5] There is also no dispute that defendants provided sufficient notice to plaintiffs, and there is no claim that the lease agreement had been modified to extend the parties' contractual relationship beyond defendants' termination of plaintiffs' tenancy on May 1, 2020 (compare Duffus v Bangs, 122 NY 423, 426-427 [1890]). As such, the mutual termination provision and defendants' exercise of that provision establish as a matter of law that, when defendants prevented plaintiffs from harvesting their crops, there was no contract left to breach (see CPLR 3211 [a] [1]; compare Beck v McLane, 129 App Div at 746-748).
Furthermore, because the mutual termination provision is unconditional, defendants' exercise of that provision is not subject to "court inquiry into whether the termination was activated by an ulterior motive" (Watermelons Plus, Inc. v New York City Dept. of Educ., 76 AD3d 973, 974 [2d Dept 2010] [internal quotation marks and citation omitted]; compare Scheer v Elam Sand & Gravel Corp., 177 AD3d 1290, 1291 [4th Dept 2019]; Ahmed Elkoulily, M.D., P.C. v New York State Catholic Healthplan, Inc., 153 AD3d 769, 770-771 [2d Dept 2017]). It therefore does not matter that defendants' exercise of the provision may "have [had] the effect of destroying or injuring the right of [plaintiffs] to receive the fruits of the contract" (Dalton v Educational Testing Serv., 87 NY2d 384, 389 [1995] [internal quotation marks and citation omitted]). After all, an implied promise to refrain from exercising the provision in a way that interferes with a harvest is nothing more than a condition of termination, which is inconsistent with the provision itself (see Cordero v Transamerica Annuity Serv. Corp., 39 NY3d at 410). Consequently, we cannot subscribe to the majority's holding that "[d]efendants' actions in exercising the early termination provision without allowing plaintiffs to reenter the land to care [*8]for and harvest their crops set forth a breach of the implied covenant of good faith and fair dealing" (majority op at 5).[FN6]
The majority further observes that, "without an express or implied obligation, plaintiffs would be unable to recover on a breach of contract theory" (majority op at 4), and, thus, "the implied covenant of good faith and fair dealing and the theory of emblements must be harmonized with the mutual termination provision" (majority op at 4). Plaintiffs are entitled to every possible favorable inference and a determination as to "whether the facts as alleged fit within any cognizable legal theory" (Singe v Bates Troy, Inc., 206 AD3d 1528, 1530 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Lewis v Dagostino, 199 AD3d 1221, 1222 [3d Dept 2021]), but that is not the same as taking alleged facts and legal theories and "harmoniz[ing]" them. To the contrary, as "[t]he covenant of good faith and fair dealing cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights" (Tour Cent. Park Inc. v Thor 38 Park Row LLC, 223 AD3d 546, 547 [1st Dept 2024] [internal quotation marks, ellipsis and citation omitted]). Accordingly, where, as here, a right or obligation alleged to be implied by the covenant of good faith and fair dealing is inconsistent with express terms of a contract, the express terms control (see Cordero v Transamerica Annuity Serv. Corp., 39 NY3d at 410).
Still, the majority "believe[s]" that "the contractual cause of action is not just viable, but an essential protection for [tenant] farmers who lease land for consideration and expend great effort tending to the land, thus reasonably anticipating that they will have the opportunity to reap what they sow" (majority op at 5-6). This is also the policy rationale underlying the doctrine of emblements (see Samson v Rose, 65 NY at 416; Hetfield v Lawton, 108 App Div at 116-117; see also Stewart v Doughty, 9 Johns 108, 112 [Sup Ct 1812]), which applies "in the absence of a stipulation in the lease contract dealing" with emblements (Dinwiddie v Jordan, 228 SW 126, 127 [Tex Commn App 1921]; compare Gregg v Boyd, 69 Hun 588, 23 NYS 918, 919 [Sup Ct, Gen Term, 5th Dept 1893]). In addition to providing the basis for plaintiffs' conversion claim here, the doctrine may be invoked to enjoin a landowner's interference in the tenant farmer's right to emblements (see Jacob H. Rottkamp & Son, Inc. v Wulforst Farms, LLC, 17 Misc 3d at 387-388) or to defend against a landowner's claim in conversion and trespass against a former tenant farmer who returned to harvest the annual crops that the farmer planted before the tenancy was terminated (see Dinwiddie v Jordan, 228 SW at 127-128).
Given the doctrine's utility, we are not persuaded that adding a contract theory is an "essential protection" (majority op at 5) for tenant farmers generally or plaintiffs specifically. The majority asserts that [*9]tenant farmers would benefit from the six-year statute of limitations for a contract cause of action as opposed to the three years allotted to a conversion cause of action (see CPLR 213 [2]; 214 [3]). Yet the majority provides no reason to suspect that tenant farmers would need six years to sue their landlords for depriving them of crops that they were in the midst of farming (see Holser v Geerholt, 193 AD3d 1302, 1303 [3d Dept 2021] [timely conversion action]). Plaintiffs here did not.
The majority also posits that, without an implied contractual right of reentry, the lease agreement could be rendered illusory because "defendants could terminate the lease agreement at any time, even after week one, despite funds and efforts having already been expended by plaintiffs" (majority op at 5). Not so. An illusory contract is "an agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation," making the contract "unenforceable" (Lend Lease [US] Constr. LMB Inc. v Zurich Am. Ins. Co., 28 NY3d 675, 684 [2017] [internal quotation marks, brackets and citation omitted]). Here, defendants actually conveyed the right to use the subject property for a minimum of 90 days and up to five years. That right is valuable consideration (cf. Wood v Duff-Gordon, 222 NY 88, 91 [1917]; compare Bray Terms. v Grand Union Co., 74 AD2d 965, 966 [3d Dept 1980]), and "so long as something of real value in the eye of the law was exchanged, the adequacy of the consideration is not a proper subject of judicial inquiry" (Grimaldi v Sangi, 177 AD3d 1208, 1210 [3d Dept 2019] [internal quotation marks, brackets and citations omitted], lv denied 37 NY3d 907 [2021]). In any event, the doctrine of emblements already provides a tenant farmer with a right of reentry for the purpose of harvesting (see Dinwiddie v Jordan, 228 SW at 128; compare Gregg v Boyd, 69 Hun 588, 23 NYS at 919), undermining the majority's reasoning.
The bottom line is that plaintiffs' contract theory is not viable because defendants' exercise of the mutual termination provision terminated the parties' contractual relationship before the alleged breach occurred, the exercise of that provision is not susceptible to judicial review for good faith and, therefore, defendants are entitled to dismissal of plaintiffs' first cause of action (see CPLR 3211 [a] [1], [7]). The majority arrives at the opposite result by approaching the issue from the opposite end: first holding that the lease agreement implies a posttermination right to harvest, and only then "harmoniz[ing]" that implied right with the mutual termination provision. Because "it is not the function of the courts to remake the contract agreed to by the parties, but rather to enforce it as it exists" (Cordero v Transamerica Annuity Serv. Corp., 39 NY3d at 410 [internal quotation marks and citation omitted]), we respectfully dissent.
Egan Jr., J.P., concurs.
ORDERED that the order is modified, on the law, with costs [*10]to plaintiffs, by reversing so much thereof as granted defendants' motion to dismiss the causes of action for breach of contract and conversion; motion denied to that extent; and, as so modified, affirmed.

Footnotes

Footnote 1: Plaintiffs do not challenge the dismissal of their third cause of action for destruction of property, therefore the issue has been abandoned (see NYAHSA Servs., Inc., Self-Ins. Trust v People Care Inc., 141 AD3d 785, 787 n 4 [3d Dept 2016]).

Footnote 2: Even at the oral argument, defendants' counsel did not argue that the purpose was anything other than to plant crops on the land. Rather, defendants argue that the purpose of the lease agreement does not contemplate the doctrine of emblements.

Footnote 3: Moreover, the crops were planted far enough in advance of the agreed-upon end date of the lease agreement such that, prior to the early termination, plaintiffs would have had more than enough time to harvest the crops.
Footnote 4: Indeed, this is the exact remedy offered by plaintiffs' counsel at the time they received the notice of termination.

Footnote 5: Plaintiffs also do not contend that the mutual termination provision is ambiguous and, as such, amenable to a construction that implies a condition of termination. Nor could they have, because "an ambiguity never arises out of what was not written at all, but only out of what was written so blindly and imperfectly that its meaning is doubtful" (Integrity Intl., Inc. v HP, Inc., 211 AD3d 1194, 1196 [3d Dept 2022] [internal quotation marks and citations omitted]).

Footnote 6: The majority also concludes that plaintiffs can maintain an action for breach of the implied covenant because the lease agreement's alleged purpose was planting and harvesting. This does not end the inquiry, for plaintiffs cannot "invoke the implied covenant by simply alleging that a defendant's conduct drastically undermined a fundamental objective of the parties' contract" (Cordero v Transamerica Annuity Serv. Corp., 39 NY3d at 410 [internal quotation marks and citations omitted]).